Essex County Circuit Court.

HERMAN Z. BAUM AND RUTH SILVER, PLAINTIFFS, v. CHARLES A. TAZWELL, HATTIE WASHINGTON AND LEE MORRIS, DEFENDANTS.

Decided August 13, 1948.

For the plaintiffs, *Philip Mandelbaum* and *David Weinick*.

For the defendants, *Abram A. Golden.*

SMITH, JOSEPH L, C. C. J.   The plaintiffs herein have instituted an ejectment action seeking possession of the entire house known as No. 13 Spring Street in the City of Newark. The complaint is in the statutory form and alleges that the plaintiffs' right of possession accrued on June 1st, 1948.   The defendants have filed an answer containing a general denial and four separate defenses.   The first separate defense alleges that the defendants are sub-tenants of the tenant, George Teamer, who held a month-to-month tenancy on the property in question.   The said George Teamer died on the 24th day of May, 1948.   The second separate defense alleges that these defendants are entitled to the protection afforded to tenants under the Housing and Rent Control Act of 1948, 50 *U. S. C. A. Appendix,* §§ 1881, *et seq.*   The third separate defense challenges the jurisdiction of the court and the fourth separate defense challenges the constitutionality of *R. S.* 2:51–25, *N. J. S. A.*

The plaintiffs move to strike the answer as sham in part and insufficient in law in part.   The affidavit relied on by the plaintiffs admits that George Teamer was a month-to-month tenant but states that the said George Teamer on or about May 10th, 1948, gave written notice of the termination of his tenancy on or before May 31st, 1948.   A copy of the notice is attached to the affidavit and the affidavit further says that the said notice was accepted by the plaintiffs.   The affidavit further sets forth the death of George Teamer on May 24th, 1948, and says that these defendants occupy the premises without the consent or permission of the plaintiffs and that they are trespassers, in that at no time was there any relationship of landlord and tenant between the plaintiffs and defendants.

The answering affidavit made by one of the defendants admits that the defendants are in possession of the premises.

It states that the defendants were sub-tenants of George Teamer during his lifetime. The court desires to point out that this affidavit is replete with hearsay and contains conclusions of law and irrelevant matter all of which the court cannot take into consideration. *Kelly* v. *Weiner* (*Supreme Court,* 1923), 1 *N. J. Mis. R.* 338; *Bougless* v. *Thomas* (*Supreme Court,* 1923), 1 *Id.* 581.

The general rule of law is that the death of a party does not terminate a lease. A statement of the rule is contained in 51 *C. J. S., Landlord and Tenant* 659, § 92, as follows: "In the absence of a covenant otherwise providing, as a general rule a lease is not terminated by the death of the lessor or the lessee." That this rule prevails in this state is clear. In *Levigton* v. *Tuly* (*Court of Chancery,* 1940), 126 *N. J. Eq.* 552; 10 *Atl. Rep.* (2d) 641, Vice-Chancellor Bigelow, 126 *N. J. Eq.* (at p. 553); 10 *Atl. Rep.* (2d) (at p. 642), said: "A tenancy from month to month is not terminated by the death of the tenant but his interest therein passes to his executor or administrator." This rule was also stated in *Dorfman* v. *Barnett* (*Circuit Court,* 1946), 24 *N. J. Mis. R.* 212; 48 *Atl. Rep.* (2d) 217, but was held inapplicable because the written contract evinced the intention to limit the occupancy to the lessee. In that case Mr. Justice Burling, then a Circuit Court Judge, 24 *N. J. Mis. R.* (at p. 218); 48 *Atl. Rep.* (2d) (at p. 218), said: "The fact of the lessee's death has created the issue in this controversy and requires the construction of the lease. Although a tenancy from month to month is not terminated by the death of the tenant and his interest passes to his administrator, *Levigton* v. *Tuly, supra,* still the contract of the parties makes this rule inapplicable. In the written lease and contract of the parties emphasis was laid upon the character of the occupancy. From the standpoint of the landlord, a meticulous evaluation of the lessee was carefully exhibited in the lease. Throughout the entire contract is evinced the intention to limit the occupancy to the lessee."

Likewise distinguishable are the cases of *Brigham* v. *Kidder* (*Court of Errors and Appeals,* 1923), 99 *N. J. L.* 79; 122 *Atl. Rep.* 740, and *Capdeville* v. *Robins* (*Circuit Court,* 1932),

10 *N. J. Mis. R.* 349; 159 *Atl. Rep.* 614. In the former it was held that the lease was incident to the deceased's law business and entirely personal, hence it perished upon the death of the tenant. Chancellor Walker, 99 *N. J. L.* (at *p.* 80); 122 *Atl. Rep.* (at *p.* 740), said: "The contract did not survive to his personal representative as he could not practice law in the deceased's place. * * * This case is controlled by our decision last term in *Brauer* v. *Hyman,* 98 *N. J. L.* 743; 121 *Atl. Rep.* 667, wherein we held that there was an implied covenant in a contract to the effect that if performance became impossible by reason of the perishing of the business itself without fault of the party sought to be charged, no recovery could he had under it." In the latter case the lease fell upon the death of the lessor, a paralytic, where part of the rent was a duty to care for the lessor by the lessee.

It is clear in the instant case that the death of the tenant without more did not operate to terminate the month to month tenancy. It is also the well settled law in this state that assignment and sub-letting are naturally incident to a leasehold estate, and are not to be restricted unless by express stipulation to that effect. *Farmer* v. *Davies* (*Court of Errors and Appeals,* 1922), 97 *N. J. L.* 309; 116 *Atl. Rep.* 706; *Simpson* v. *Moorhead* (*Court of Chancery,* 1904), 65 *N. J. Eq.* 623; 56 *Atl. Rep.* 887; *Braunstein* v. *McGrory Corp.* (*Court of Errors and Appeals,* 1922), 93 *N. J. Eq.* 419; 116 *Atl. Rep.* 707; *Field* v. *Mills* (*Supreme Court,* 1869), 33 *N. J. L.* 254. A sub-letting creates the relationship of landlord and tenant between the tenant and the sub-tenant but there is no privity of contract between a landlord and a subtenant. Anything which defeats the tenants' estate will destroy the sub-tenants' estate. *Cifelli* v. *Santamaria* (*Supreme Court,* 1910), 79 *N. J. L.* 356; 75 *Atl. Rep.* 434; *D'Agostino* v. *Sheppard* (*Court of Errors and Appeals,* 1925), 102 *N. J. L.* 154; 130 *Atl. Rep.* 520. However, this court must take judicial notice of the provisions of the Federal Housing and Rent Control Act of 1948. In view of this act the question arises as to the right of sub-tenants to remain in possession even in the event that the leasehold of the sub-lessor has been terminated. This court has not found any reported cases

wherein the above question has been decided in New Jersey. A partial discussion of the question is contained in the case of *Shaw* v. *Creedon* (*Court of Chancery*, 1943), 133 *N. J. Eq.* 397; 32 *Atl. Rep.* (*2d*) 721, wherein Vice-Chancellor Woodruff, 133 *N. J. Eq.* (at *p.* 400); 32 *Atl. Rep.* (*2d*) (at *p.* 723), said: "At common law a surrender of his term by a lessee and its acceptance by the lessor merged the lesser term into the greater." So, it was held that, while a sub-tenant was not deprived of his right to use the property demised to him, neither the lessor nor the lessee could maintain an action against him for rent. *Webb* v. *Russell*, 3 *T. R.* 393; 100 *Eng. Report* 639. In *McDonald* v. *May*, 96 *Mo. App.* 236; 69. *S. W. Rep.* 1059, 1061, the court said: "The surrender of the main term of a leasehold estate totally extinguishes it and with it any subterms; or rather, would extinguish any subterm as a necessary result of the extinction of the main term, but for another rule of law which has been raised for the protection of under-tenants, to wit: that their rights will not be destroyed or impaired by a surrender of the main lease; and yet, the surrenderee may not sue the under-tenant for rent or on any other covenant. This rule is both ancient and technical, but has been laid down by all text writers and followed in all old judgments on the subject." The reason assigned for the latter rule protecting the sub-tenant is that by the sub-lease the sub-lessee acquires an estate in the land which cannot be defeated by any act or omission of the sub-lessor that does not derogate from the rights of the original lessor; therefore, after sub-letting, the original lessee cannot affect the interest of the sub-lessee by a surrender to the original lessor. One of the arguments advanced by counsel for the plaintiff herein is that the landlord would have no right to enforce payment of rent from the sub-tenants. In the case of *Shaw* v. *Creedon, supra,* Vice-Chancellor Woodruff, 133 *N. J. Eq.* (at *p.* 401); 32 *Atl. Rep.* (*2d*) (at *p.* 724), said: "Vice-Chancellor Backes also cited other authorities and called attention to the fact that a landlord in New Jersey had the right of re-entry upon a tenant's default in the payment of rent, and, upon execution of a judgment, to dispossess the tenant with the result that the sub-tenant also

suffers eviction under the Landlord and Tenact Act. The Vice-Chancellor added: To protect himself against eviction, a sub-tenant may pay the rent due the landlord and discharge himself of his rent due the tenant." At page 402 of 133 *N. J. Eq.*, at page 724 of 32 *Atl. Rep.* (*2d*), Vice-Chancellor Woodruff further said: "In this connection and in the absence of direct precedents, it is helpful to consider the provisions of *R. S.* 2:58–4; *N. J. S. A.* 2:58–4. This act restored a landlord's common law right to seize a sub-tenants' goods in proportional satisfaction of his rent; it created an additional remedy, a lien by distress *pro tanto,* in aid, not in limitation, of his equitable right to the sub-tenant's rent." Therefore, it seems to this court that a landlord is amply protected in his right to collect rent from a sub-tenant. He may distrain on the sub-tenant's goods which are on the premises, bring an action for eviction of both tenant and sub-tenant, and he may possibly seek the aid of our Court of Chancery. In 32 *Am. Jur.* 345, ¶ 425, the rule is stated as follows: "The surrender of a lease by a lessee to his lessor, after a sublease, will not be permitted to operate so as to defeat the estate of the sublessee." It is also necessary to consider the effect of the Housing and Rent Act of 1947 as amended by the Housing and Rent Act of 1948 in so far as the rights of sub-tenants are concerned with respect to housing accommodations. It is to be noted that these acts do not expressly include sub-tenants. In the case of *112 East 36th Street Holding Corp.* v. *Daffos* (*Supreme Court, N. Y.,* 1947), 190 *Misc.* 551; 75 *N. Y. S.* (*2d*) 639, the court (at *p.* 642) said: "The purpose and intendment of both the Federal Housing and Rent Act of 1947, effective July 1st, 1947 [50 *U. S. C. A. Appendix,* §§ 1881, *et seq.*], and its predecessor; the Emergency Price Control Act of 1942 [50 *U. S. C. A. Appendix,* §§ 901, *et seq.*], as implemented by the rent regulations promulgated pursuant thereto respectively, was, and is, to prevent the *removal* or *eviction* of persons from housing accommodations which they actually occupy so long as they continue to pay the rent to which the landlord is entitled by law, except under certain conditions not here involved."

The Housing and Rent Act of 1947 provides that: "No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled." 50 *U. S. C. A. Appendix,* § 1899. There are certain exceptions to this, none of which are pertinent to the instant case. The defendants herein allege in their answer that they are entitled to the protection of section 204 (A) of the Housing and Rent Act of 1948 which amended section 209A of the 1947 act. The proper construction of this section is not on its face free from doubt. *Paxson* v. *Smock (District Court, E. D. Pennsylvania,* 1947), 73 *Fed. Supp.* 793. In *Creedon* v. *Stratton (District Court, D. Nebraska,* 1947), 74 *Id.* 170, Judge Delehant (at *p.* 182) said: "It must be remembered that in eviction cases the state courts possess the power and are under the duty to protect tenants in their federally guaranteed rights."

Apparently our state courts have not had occasion to pass on the applicability of the Housing and Rent Acts of 1947 and 1948 but in this connection it is to be noted that our legislature enacted a law on July 22d, 1946, known as the "Rent Control Act." This act was suspended by the Governor on July 30th, 1946. *R. S.* 2:58–32.16; *N. J. S. A.* 2:58–32.16, a part of the Rent Control Act contains certain definitions. Under paragraph (C) of this section a tenant is defined as "A lessee, sublessee, licensee, or other person entitled to the possession or to the use or occupancy of the whole or a part of any housing space." This act, of course, is not controlling but is referred to as illuminative of the intent of our legislature.

It is the duty of the Court on this motion to determine whether an issue of fact has been presented and not to try the issue on affidavits. *Barnes* v. *P. & D. Manufacturing Co. (Court of Errors and Appeals,* 1936), 117 *N. J. L.* 156; 187 *Atl. Rep.* 186. In the instant case the affidavits raise an issue of fact as to the character of the possession of the defendants.

The questions of law alluded to above depend for their determination in part on the factual questions and must await the timely presentment of proof and evidence relative thereto. The ruling of Mr. Justice Burling in *Cross* v. *Margolis* (*Supreme Court,* 1948), 136 *N. J. L.* 453; 56 *Atl. Rep.* (*2d*) 759, is equally applicable here. At page 455 of 136 *N. J. L.*, 56 *Atl. Rep.* (*2d*) 760, Mr. Justice Burling said: "The legal points that have been raised with respect to the alleged agreement are not presently susceptible of determination until the entire facts are more fully elicited as a result of direct and cross-examination of the witnesses." This court recently had occasion to rule on a motion to strike the complaint in an ejectment action in *DeStefano* v. *D'Allesandro,* 26 *N. J. Mis. R.* 176; 58 *Atl. Rep.* (*2d*) 548, wherein this court refused to grant the motion because of the legal dispute involved. It is equally desirable on this motion to have the proofs, evidence, and facts fully developed by trial evidence so that the legal rules may be more intelligently considered and applied.

While I feel that this motion to strike the answer must be denied on the merits, I am also mindful of the fact that the intendment of our Federal Housing and Rent Control Act and the public policy of our legislature as expressed in the now suspended Rent Control Act must be given serious consideration. If this court were to hold that sub-tenants had no rights to continue their possession of housing accommodations upon the termination of the lessee's estate, the practical effect would be to nullify the provisions of the Federal Housing and Rent Control Act.

The motion to strike the answer is denied. Counsel may present an appropriate order and place case on commercial calendar.