264 N.J. Super. 344 (1993)
624 A.2d 996
CENTER AVENUE REALTY, INC., PLAINTIFF-RESPONDENT,
v.
JOEL SMITH, AS EXECUTOR OF THE ESTATE OF CECIL SMITH AND JOEL SMITH, INDIVIDUALLY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 7, 1992.
Decided May 4, 1993.
*345 Before Judges PRESSLER, R.S. COHEN and KESTIN.
Ronald Schwartz, argued the cause for appellant.
Mark Winkler argued the cause for respondent (Rusch and Litt, attorneys).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
*346 Commenced as a summary dispossess action in the Special Civil Part, this landlord-tenant dispute was transferred to the Law Division pursuant to R. 6:4-1(g) by sua sponte order of the court. Defendant Joel Smith, individually and as executor of the estate of his deceased mother Cecil Smith, appeals from a summary judgment entered by the Law Division granting plaintiff-landlord, Center Avenue Realty, Inc., a judgment of ejectment and an award of money damages. We reverse.
The relevant facts are not in substantial dispute. The premises consist of an apartment in plaintiff's residential building in Fort Lee. Defendant's family took occupancy of the apartment in 1967 under a two-year lease naming his parents, Leon Smith and Cecil Smith, as tenants, and both executed the lease. Occupancy was limited to the Smiths and those members of their immediate family named in their application form. Defendant, then an adult, had been so named and resided with his parents for several years. He left in 1970 when he married. Written annual renewal leases were thereafter executed, the last for the period ending March 31, 1981. At some point during this relationship, Leon Smith became the only named and executing tenant although his wife continued to live with him. As we understand the record, the continued tenancy after 1981 was a month-to-month holdover tenancy pursuant to law, N.J.S.A. 46:8-10, and was memorialized by way of an annual notice of extension sent by the landlord and signed by the tenant, Leon Smith, stating the new annual rent.
Leon Smith died in 1987. Cecil Smith remained as the tenant, and although she refused to sign the annual extension notices which now named her as the tenant, she nevertheless paid the rent due as required thereby. Mrs. Smith's health had by this time begun to fail and by 1989, she was suffering from a degenerative disease making it difficult for her to continue living alone. Consequently defendant, by then divorced, returned to Fort Lee to live with his mother. His subsequent request to plaintiff that *347 he be named as the tenant in the annual extension notices was rejected.
Mrs. Smith died testate in February 1991. Defendant was her executor and heir. He claimed the right to succeed to his mother's tenancy in either of those capacities or as tenant-occupant during his mother's lifetime. Plaintiff, however, took the position that Mrs. Smith's death had effectively terminated the original tenancy and that if defendant wished to remain, he would have to do so as a new tenant subject to Fort Lee's vacancy decontrol ordinance. Since defendant insisted on his right to remain under the original tenancy, plaintiff brought a summary dispossess action, which, as noted, was then transferred to the Law Division for disposition as an ejectment action.[1]
The trial court, concurring with plaintiff's view of the matter, required defendant to vacate and entered judgment in plaintiff's favor in the amount of the difference between the rent Mrs. Smith had been obligated to pay and the decontrolled rental value of the apartment. Although defendant appealed from that judgment, he voluntarily vacated before the end of 1991 even though the judgment, entered in October 1991, was, by its own terms, stayed pending appeal.
Because defendant has vacated the premises, we are satisfied that his right to remain in the premises as a successor tenant under the terms of the original lease and subject to removal only under the Anti-Eviction Law, N.J.S.A. 2A:18-61.1, presents a moot question that we need not decide. In order to address the remaining damages issue, we must, however, determine the legitimacy of defendant's retention of the premises under his mother's tenancy at least for the period between her death in February 1991 and either the date of the trial court judgment in October 1991 or his actual removal in December 1991.
*348 As noted, defendant argues that his right to remain for that period of time derives from his status as an occupant on the date of his mother's death or his status as a tenant in his own right based either on his original or resumed occupancy, or his status as executor, or his status as heir, or a combination of some or all of these factors.
We consider first the consequence of defendant's executor status, erroneously dismissed as inconsequential by the trial judge. It is well settled that when a tenancy for a stated term of a year or more is converted to a holdover month-to-month tenancy by reason of expiration of a written lease without execution of a renewal lease, the holdover tenancy is ordinarily subject to all the terms and conditions of the written lease other than its durational term. See, e.g., S.D.G. v. Inventory Control Co., 178 N.J. Super. 411, 414, 429 A.2d 394 (App.Div. 1981); Heyman v. Bishop, 15 N.J. Super. 266, 269, 83 A.2d 344 (App.Div. 1951). Consequently, the continued tenancy of Mrs. Smith, as to whose tenant status there is no dispute, was subject to the terms and conditions of the last written lease covering the subject premises, namely, the 1980-1981 lease.
That lease contained two pertinent provisions. The first was the statement preceding the enumerated terms and conditions of the lease that
The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows: ....
The second is numbered paragraph 29 of the lease, which states that
The covenant, conditions and agreements contained in this lease shall bind and inure to the benefit of the Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns.
As we view the matter then, the question is not whether defendant had the rights conferred by the lease as an executor. He clearly did. The problem, rather, is to define the extent and scope of those rights.
*349 Both common and statutory law address the issue. Putting aside for the moment consideration of the consequence of the Anti-Eviction Act as well as municipal rent levelling ordinances, we are satisfied that as a matter of well established legal doctrine, both the rights and obligations of the executor are coextensive with the rights and obligations of the tenant under the lease. Thus those rights and obligations can endure only for the durational term of the lease, since, obviously, the tenant could not ordinarily insist on the right to remain after its expiration and the landlord could not ordinarily require the tenant to remain obligated thereafter. See, e.g., Baum v. Tazwell, 26 N.J. Misc. 292, 294, 61 A.2d 12 (Cir.Ct. 1948), noting that "[i]n the absence of a covenant otherwise providing, as a general rule a lease is not terminated by the death of the lessor or the lessee." And see Gross v. Peskin, 101 N.J. Super. 468, 469, 244 A.2d 692 (App.Div. 1968), holding the deceased tenant's executor liable for rent for the balance of the term of the lease. See, generally, Annotation, Death of Lessee as Terminating Lease, 42 A.L.R.4th 963 (1985). Indeed, the recognition that the executor of the deceased tenant not only has the right to succeed to the balance of a lease for a term of a year or longer, but also has the duty to meet his decedent's obligations under the lease for that period is the underlying predicate of N.J.S.A. 46:8-9.1. That remedial statute, applicable to residential leases of a year or more, permits the executor of an occupant-tenant to terminate the lease on forty days' notice and accords the same right to a surviving spouse who is individually obligated under the lease.
The rule that the tenant's death does not terminate the lease has been held equally applicable to a month-to-month tenancy. Thus, in Levigton v. Tuly, 126 N.J.Eg. 552, 553-554, 10 A.2d 641 (Ch. 1940), Vice-Chancellor Bigelow, albeit in a different context, held that "A tenancy from month to month is not terminated by the death of the tenant but his interest therein passes to his executor or administrator." See also State v. Pierce, 175 N.J. Super. 149, 152, 417 A.2d 1085 (Law Div. 1980); Baum, supra, 26 *350 N.J. Misc. at 294, 61 A.2d 12; Dorfman v. Barnett, 24 N.J. Misc. 212, 213, 48 A.2d 217 (Cir.Ct. 1946).
At the time of the tenant's death here, the tenancy was, as we have noted, technically month to month by operation of law applicable to a holdover following the expiration of a term for a year or more. If the Anti-Eviction Act were not a consideration, the landlord would have had the right to terminate the tenancy on thirty days' notice. N.J.S.A. 2A:18-56b. Consequently, consistent with the executor's rights under the lease, plaintiff could have regained possession from the executor, standing in the tenant's shoes, or at least asserted its right to possession, at the end of the month following the month in which the tenant died.
The problem with what would otherwise be a simple application of well-settled rules of law results, of course, from the Anti-Eviction Act. The effect of that Act is to create a perpetual tenancy, virtually a life interest, in favor of a tenant of residential premises covered by the Act as to whom there is no statutory cause for eviction under N.J.S.A. 2A:18-61.1. Thus, the effective term of the lease is for as long as the tenant wishes to remain, provided he pays the rent, whose increases may, moreover, be limited by rent levelling ordinances, and provided there is no other statutory cause for eviction under N.J.S.A. 2A:18-61.1, and provided the premises have not been retired from residential use or converted to other form of ownership pursuant to N.J.S.A. 2A:18-61.1b to -61.1d, and provided the other circumstances permitting eviction enumerated by N.J.S.A. 2A:18-61.3b(2) and (3), do not occur.
The question then, in the absence of definition by the lease, is whether, where the tenancy is governed by the Anti-Eviction Act, the durational term succeeded to by the executor of a deceased holdover month-to-month tenant is the tenant's perpetual term, the common-law thirty days, or some other alternative.[2] *351 We note, at the outset, that the Anti-Eviction Act, by its terms, applies not only to the tenant, but also to the tenant's legal representatives. N.J.S.A. 2A:18-61.1. If this provision were construed literally, as defendant would have us do, the legal representative would apparently succeed to his decedent's perpetual term and, in effect, the tenancy could actually continue indefinitely down through all the generations succeeding the original tenant. We doubt that this conversion of the present virtual life interest of the tenant into a virtual fee simple by application of the rule in Shelley's case[3] was intended by the Anti-Eviction Act, and we decline to so construe it.
We base our construction of the Anti-Eviction Act's protection of the legal representative, at least in this context, on what the role and function of an executor actually are. The executor's obligation is to marshall the assets of the estate, to distribute them in accordance with the will, and to take the steps prescribed by law and reasonably necessary to administer and wind-up the estate. See, e.g., In re Armour's Will, 33 N.J. 517, 524, 166 A.2d 376 (1960). His function clearly does not authorize him to occupy the decedent's residential leasehold for his own benefit. He may retain the leasehold, to the extent it is retainable at all, only for the benefit of the estate and as reasonable or necessary for the winding up of the estate. See, e.g., 100 West 72nd Street Assoc. v. Murphy, 144 Misc.2d 1036, 545 N.Y.S.2d 901, 903 (N.Y. Civ. Ct. 1989); Lomnitz v. 61 East 86 Street Equities Group, 129 Misc.2d 157, 492 N.Y.S.2d 915, 921 (Sup.Ct. 1985). We see nothing in the Anti-Eviction Act according the executor anything more. We therefore construe the protection afforded by the Act to the executor of a deceased month-to-month holdover protected tenant *352 as limited to the right to retain the premises only for the period required for the winding-up of the estate. This may be some months more than the thirty days required for the landlord's notice to vacate. It is clearly substantially less than the perpetual tenancy urged by defendant.
We recognize that there is no fixed time for the winding-up of an estate. There are, however, a number of guidelines available for the typical case. Federal law requires filing of the estate tax return within nine months after decedent's death. 26 U.S.C.A. § 6075(a). New Jersey law requires filing within thirty days after filing of the federal return. N.J.S.A. 54:38-7. Executors may obtain an order giving creditors of the estate six months in which to present their claims. N.J.S.A. 3B:22-4. We are satisfied that the time period of defendant's occupancy here as executor of the tenant's estate and subject to the terms of the decedent's tenancy was within these parameters. We consequently conclude that that occupancy was in accord with the terms of the lease which continued to control the decedent's tenancy. Hence plaintiff is not entitled to any damages resultant therefrom.
Since damages are all that remain in issue, we do not address defendant's contention that he is entitled to succeed to his mother's tenancy as an occupant or tenant in his own right.[4] Because of the problematical overlay of the Anti-Eviction Act on common-law landlord-tenancy principles, it may be that statutory solutions advancing the legislative purposes of the Act would be appropriate, but that, of course, is a matter for the Legislature. We note, for example, the provision of the New York City Rent and Eviction Regulations, 9 NYCRR 2204.6(d), which accords antieviction rights to "either the surviving spouse of the deceased tenant or some other member of the deceased tenant's family who has been living with the tenant...." See, e.g., Braschi v. Stahl Associates, 74 N.Y.2d 201, 544 N.Y.S.2d 784, 785, 543 N.E.2d 49, *353 50 (1989). We leave, however, for another day, the question of the scope of our Anti-Eviction Act vis-a-vis occupant family members of deceased tenants.
The appeal from that portion of the order ejecting defendant is dismissed as moot. The portion of the order awarding plaintiff damages is reversed, and we remand for entry of judgment of no cause for action on that claim.
NOTES
[1] Plaintiff's insistence that defendant had no rights as a tenant was obviously inconsistent with its commencement of a summary dispossess action.
[2] See, for example, N.J.S.A. 2A:18-61.3a, which requires the landlord to renew the lease of covered premises. It may thus be argued that while the combination of the Anti-Eviction Act and municipal rent levelling ordinances obviates the need for actual renewal of yearly leases once the terms and conditions of the tenancy have been established by an initial written lease, nevertheless the tenancy should be treated after the expiration of the last written lease as if renewal leases had in fact been executed.
[3] Wolfe v. Shelley, 1 Coke 93b, 76 Eng.Rep. 206 (K.B. 1581).
[4] It is clear, however, that defendant does not have any right to retain the tenancy as heir. Clearly, a month-to-month holdover tenancy of a residential unit is not alienable, the Anti-Eviction Act notwithstanding.