753 A.2d 1236 (2000)
332 N.J. Super. 555
WG ASSOCIATES, Defendant-Respondent/Cross-Appellant,
v.
ESTATE OF Matilda ROMAN and Myrna Roman Saraceno, Plaintiffs-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted April 10, 2000.
Decided July 13, 2000.
*1237 Community Health Law Project, for plaintiff-appellants/cross-respondents (Stacy M. Noonan, on the brief).
Feinstein, Raiss, Kelin & Booker, West Orange, for defendant-respondent/cross-appellant (Rosalie C. Scheckel, on the briefs).
Before Judges HAVEY and A.A. RODRÍGUEZ and COLLESTER.
The opinion of the court was delivered by RODRIGUEZ, A.A., J.A.D.
In this appeal, we hold that a person who occupies an apartment by virtue of being a member of a protected tenant's household cannot extend or create a tenancy relationship by paying rent to the landlord after the protected tenant dies. Absent a new tenancy created by mutual agreement, the landlord is entitled to possession.
These are the facts. John Roman and Matilda Roman were longtime tenants in a multi-unit building in Roselle. In February 1984, the Romans signed a lease with then-landlord, New Jersey Realty Company. The lease provided that the apartment would be used by themselves "and their 0 children." The lease contained a clause providing that
[t]he apartment may not be occupied by anyone other than the Tenant and his household members. The Tenant may not sublet the apartment nor may Tenant assign this Lease.
The Romans' daughter Mildred Roman Saraceno and her son lived with them in the apartment. In February 1985, the Romans signed a renewal extending the initial lease for another year. The same occurred the next three years.
In 1985, the apartment building converted to condominium ownership. Matilda Roman applied for protected status under the Senior Citizens and Disabled Protected Tenancy Act, N.J.S.A. 2A:18-61.22 to 61.39.[1] In 1985, WG Associates (WGA), a partnership, purchased twelve of the condominium units in the building, including the one where the Romans resided. Since then, WGA has sold the other eleven units.
In January 1986, the Romans agreed, in writing, with WGA to change the duration of the tenancy from a year term to a periodic month-to-month tenancy. This written agreement provided that "all other terms and conditions of [the] lease will stay the same." Each year thereafter, the Romans received notice of monthly rent increases. This notice reiterated that this was a periodic tenancy and that the terms of the original lease governed the parties' relationship.
John Roman died in 1990 and Matilda Roman died in October 1997. After Matilda Roman died, Saraceno remained in the apartment and continued to pay the $469.83 monthly rent. WGA claims that it had no idea that Saraceno and her son were living in the apartment.
However, Saraceno testified that she had numerous dealings with WGA through its agent, Joel Grossman. Additionally, Saraceno claims that Grossman used to tell *1238 her that "he wasn't sure that [she] was supposed to be living [in the apartment]."
Grossman admitted that he had spoken with Saraceno and had met her once. But, he testified that it was not unusual for the children of an elderly person to assist the parent with complaints or requests for repairs. Grossman alleges that Saraceno attempted to deceive WGA about her mother's death because she would send checks and money orders for the rent in her mother's name. On one occasion, after Matilda Roman died, Saraceno sent him a note requesting repairs to be done and stating that "my mother was not here because she had doctors appointments and graduations to go to."
In May 1998, WGA learned that Matilda Roman had died. On May 26, 1998, WGA sent a notice to cease addressed to "Matilda Roman." The notice stated that there were unauthorized persons living in the apartment in violation of the lease and that if such persons did not vacate immediately there would be an eviction. On June 26, 1998, WGA sent a notice to quit addressed to Matilda Roman terminating the tenancy effective July 31, 1998, because the unauthorized persons had remained in the apartment.
Despite the notice to quit, WGA inadvertently accepted both the August and September 1998 monthly rent checks from Saraceno. As a result, WGA sent a second notice to quit addressed to "Estate of Matilda Roman or Present Occupant" terminating the tenancy as of October 31, 1998, because unauthorized persons were still living in the apartment.
Again, Saraceno did not vacate the premises. WGA brought a summary dispossess action against the Estate and Saraceno to remove a "holdover tenant." Saraceno appeared on the trial date to defend the complaint as the "Present Occupant." The judge conferenced the matter and directed the parties to submit briefs on the issues. On the adjourned date, the judge heard testimony from both parties. He found that WGA had no basis to evict Saraceno because a new tenancy existed such that the Anti Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12 applied. The judge determined that WGA had not shown good cause to evict and thus, denied the judgment for possession. However, the judge found that Saraceno owed back rent for the "fair market" value of the apartment from the date of Matilda's death.
Saraceno appeals objecting solely to the part of the decision that compels her to pay back rent. WGA cross-appeals the denial of a judgment for possession.
WGA contends that the trial judge erred by finding that Saraceno was a tenant who enjoys the protections of the Anti-Eviction Act. WGA also argues that even if Saraceno was a tenant, she is not protected under either the Condominium Conversion Statute, N.J.S.A. 2A:18-61.7 to -61.12, or the Senior Citizens and Disabled Protected Tenants Act, N.J.S.A. 2A:18-61.22 to -61.39. Therefore, the allowed use of the premises and the protected tenancy terminated when Saraceno's mother died. We agree and conclude that neither the tenancy nor its protected status could be transferred or assigned to Saraceno.
The existence of a landlord-tenant relation is contractual in nature and may be express or implied. Hertzberg v. Siegel, 8 N.J.Super. 226, 229, 73 A.2d 840 (App.Div.1950). Such a relationship can arise from the conduct of the parties and may be implied even in the absence of a written agreement under certain circumstances. See Housing Auth. of East Orange v. Leff, 125 N.J.Super. 425, 433-34, 311 A.2d 213 (Law Div.1973).
Although the specific issue has never been addressed by the Appellate Division or the New Jersey Supreme Court, it is generally thought that in the absence of a covenant, a tenancy is not terminated by the death of the landlord or the tenant. Housing Auth. of Newark v. Reid, 263 N.J.Super. 554, 559, 623 A.2d 314 (Law Div.1993); State v. Pierce, 175 *1239 N.J.Super. 149, 152, 417 A.2d 1085 (Law Div.1980); Boum v. Tazwell, 26 N.J. Misc. 292, 294, 61 A.2d 12 (Essex County Cir. Ct.1948); see also Gross v. Peskin, 101 N.J.Super. 468, 468, 244 A.2d 692 (App.Div.1968) (finding a lessee's personal representative obligated for rent after the lessee's death). Further, merely because a lease restricts assignability or fails to bind the parties' heirs, executors, administrators or successors does not mean that the lease must terminate upon a lessee's death. See 51C C.J.S. Landlord and Tenant § 92 (1968).
We have briefly discussed the issue of whether or not an occupant, who is the "survivor" of a tenant of record, has a right to remain in the apartment. In the case of Center Ave. Realty v. Smith, 264 N.J.Super. 344, 346, 624 A.2d 996 (App.Div.1993), the son of an ailing tenant moved in to care for his mother for three years. After the tenant died, the landlord moved to eject the son claiming that the death terminated the tenancy. Id. at 347, 624 A.2d 996. The trial court granted a judgment of possession and the son appealed. Ibid. On appeal, however, the issue regarding whether the son was entitled to succeed to his mother's tenancy as an occupant or tenant in his own right, was rendered moot because the son had moved out.
The same issue was again considered two years later in Riverview Realty v. Williamson, 284 N.J.Super. 566, 665 A.2d 1150 (App.Div.1995). In this case, a tenant refused to sign a new lease, which contained a clause that the lease would terminate upon the death of the tenant. Id. at 568, 665 A.2d 1150. The apartment was occupied by the tenant, her daughters and her grandchild. Id. at 567, 665 A.2d 1150. After the tenant refused to sign the new lease, the landlord filed an eviction complaint and obtained a judgment for possession. Id. at 568, 665 A.2d 1150. On appeal, we noted that the Anti-Eviction Act's protection is not limited to only lessees and tenants, but also to "assigns, undertenants or legal representatives of such lessee or tenant." Id. at 569, 665 A.2d 1150 (quoting N.J.S.A. 2A:18-61.1). Thus, we observed that the language suggested "a legislative intent to afford protection to a broader category of residents than merely the person obligated under the written or oral lease." Ibid. Nonetheless, because the tenant was still alive, we declined to decide whether her surviving resident children would become tenants upon her death.
Even though the holdings are inconclusive, the present case is factually distinguishable. Here, we are dealing with a special kind of landlord/tenant relationship. In her lifetime, Matilda enjoyed a protected tenancy by virtue of the Senior Citizen and Disabled Protected Tenancy Act, N.J.S.A. 2A:18-61.22 to -61.39. This Act confers upon a qualifying senior citizen or disabled person and their surviving spouse protection from eviction by reason of the conversion of a residential unit from the rental market to condominium ownership. N.J.S.A. 2A:18-61.24a & b. A protected tenancy lasts for forty years following the conversion. N.J.S.A. 2A:18-61.24h. However, the protected tenancy terminates when "the dwelling unit is no longer the principal residence of the senior citizen or disabled tenant." N.J.S.A. 2A:18-61.32a. Upon the termination of a protected tenancy, the landlord is permitted to remove the tenant. N.J.S.A. 2A:18-61.1k.
Applying those principles here, it is clear that upon Matilda Roman's death, her right to a protected tenancy was terminated. This right did not extend to her surviving children, only to a surviving spouse. In her case, there was no surviving spouse. Therefore, Saraceno had no right to remain in possession of the premises, except for a short period of time after her mother's death, in order to make relocation arrangements.
Saraceno acknowledges that she did not enjoy a protected tenancy, however, she asserts that governing case law in *1240 no way "prohibits or prevents" WGA from entering into a new tenancy with an "unprotected" tenant. We agree. However, there is no basis to conclude that WGA entered into such an agreement here. The record shows that WGA sent a notice terminating the tenancy as of July 31, 1998. Through its inadvertence, WGA accepted the August and September 1998 rent. Saraceno claims that this acceptance created a new month-to-month tenancy. In that instance, Saraceno could not be evicted except for cause pursuant to the Anti-Eviction Act, N.J.S.A. 2A:18-61.1. We disagree. If Saraceno had been a periodic tenant of WGA, her tenancy could be extended by the acceptance of rent. However, under the circumstances presented here, a tenancy could not be created by the acceptance of rent payments because Saraceno was not paying the rent on her own behalf. The facts demonstrate that Saraceno paid rent as a representative of her mother's estate. As such, Saraceno could not extend the tenancy because she had no legal right to do so.
Finally, Saraceno's conduct in paying rent and occupying the unit as if her mother were alive was improper. Such actions could render her liable to WGA for the use and occupancy of the premises. However, that issue was not before the Special Civil Part. Therefore, the judge should not have ordered Saraceno, in the context of this proceeding, to pay "back rent."
Pursuant to New Jersey law, courts hearing a summary dispossess action lack general equitable jurisdiction. Carr v. Johnson, 211 N.J.Super. 341, 347, 511 A.2d 1208 (App.Div.1986). Although the court may consider equitable defenses, it is beyond the power of the court to grant permanent injunctive or other equitable relief to parties. Because the landlord-tenant section is created by statute, the jurisdictional powers of the court are strictly statutory. See Chapman Mobile Homes, Inc. v. Huston, 226 N.J.Super. 405, 408, 544 A.2d 442 (Law Div.1988).
We have also held that "[t]he equitable jurisdiction of the Special Civil Part in a summary dispossess action is limited to matters of defense or avoidance asserted by the tenant." Chau v. Cardillo, 250 N.J.Super. 378, 385, 594 A.2d 1334 (App.Div.1990). Therefore, it is clear that in this summary disposes action by the tenant against the Estate of Matilda Roman to recover possession from her surviving daughter, the judge should not have considered other issues.
Accordingly, the award of back rent is reversed without prejudice. The denial of the judgment for possession is also reversed and the matter is remanded for the entry of a judgment in favor of WGA.
NOTES
[1] There is no direct evidence in the record to this fact. However, neither appellant nor respondent disagree as to this point. Both parties acknowledge that Matilda Roman's tenancy was protected under the statute.