**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1808-19T3

GOLDEN APPLE HOLDINGS,
LLC,

     Plaintiff-Respondent,

v.

GLORIA REYES,

     Defendant,

and

HERIBERTO ALMONTE,

     Defendant/Intervenor-Appellant.

_____

Argued telephonically argued April 30, 2020 –
Decided June 22, 2020

Before Judges Fisher, Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. LT-013044-19.

John V. Salierno argued the cause for appellant.

Alison C. Ingenito argued the cause for respondent.

PER CURIAM

This appeal presents a question of whether an occupant of an apartment is a functional tenant protected under the Anti-Eviction Act (the Act), N.J.S.A. 2A:18-61.1 to -61.12. The occupant, Heriberto Almonte, appeals from a judgment of possession and a warrant of removal entered following a bench trial during which the trial judge rejected his argument that he was a functional tenant. We reverse and remand for a new trial before a new judge because the trial judge made inadequate findings of fact and misapplied the governing law.

I.

We derive the facts from the record developed at a one-day bench trial held in the Law Division, Special Civil Part, on December 16, 2019. In November 2019, the landlord, Golden Apple Holdings, LLC (the Landlord), filed a summary dispossession action seeking to evict Almonte and his two adult daughters.

At trial, the Landlord called one witness: the project manager for the apartment building. The project manager testified that the Landlord purchased the building, located in West New York, in February 2018. At that time the apartment at issue was already occupied and the rent for the apartment was being paid. The Landlord submitted a February 1999 lease, which a prior landlord had

signed with Gloria Reyes (the Lease). The Lease was month-to-month and it did not have a provision addressing what would happen if the tenant died.

The Landlord asserted that Reyes was no longer living in the apartment and Almonte and his two daughters were therefore unauthorized occupants. In support of that position, the Landlord relied on paragraph 4 of the Lease, which states:

> USE OF PROPERTY. The Tenant may use the apartment only as a private residence and only the persons named below may reside in the Premises with Tenant: Miosotis H. Almonte, Arian[]A. Almonte, [and] Heriberto Almonte.
>
> No other person will be permitted to reside in the Premises without the Landlord's written consent. Any change in the persons who are residing at the Premises must be reported to Landlord in writing immediately. Tenant is responsible for compliance with this agreement. If any person resides at the Premises who is not authorized by Landlord to reside at the Premises, Landlord may cancel this Lease, and Tenant must vacate the Premises within five . . . days of cancellation.

The Landlord contended that the phrase "reside in the [p]remises with [t]enant" meant that Almonte and his daughters could only stay in the apartment with Reyes, and when Reyes vacated the apartment, they became unauthorized occupants. In addition, the Landlord relied on paragraph 14 of the Lease, which

3

states that the tenant could not sublease the apartment without the Landlord's prior written consent.

The property manager testified that sometime after February 2018, he spoke to one of the daughters who told him that she was the daughter of Reyes and Reyes no longer lived at the apartment. Thereafter, the Landlord, through its attorney, sent two notices to the apartment. The notices were dated August 1, 2019 and September 19, 2019, and were addressed to "Gloria Reyes, tenant and Unauthorized Occupants" and "Gloria Reyes (and any other occupants)." The notices directed the occupants to cease violating the Lease and to vacate the apartment.

The Landlord contended that Almonte and his daughters were violating the Lease by occupying the apartment without Reyes. The Landlord did not rely on any other provision of the Lease and did not contend that the rent for the apartment had not been paid on a timely basis.

Almonte intervened in the action and testified at trial. He explained that he married Reyes in 1989, and that they had moved into the apartment in 1992 or 1993. Almonte testified his daughters were born in 1991 and 1997, and that they had lived with him continuously in the apartment. Concerning the Lease, Almonte testified that Reyes signed the Lease because he was at work when it

A-1808-19T3

arrived. In that regard, he explained that she called him, and he told her to sign the Lease.

Almonte also testified that shortly after the Lease was signed, he and Reyes separated. He stated that he and his daughters continued to live in the apartment. He also testified that he was the person who paid the rent during the entire period they lived in the apartment, including after Reyes left the apartment. He also explained that he believed Reyes had died a number of years before this action was filed.

In addition, Almonte testified that he told a prior landlord that Reyes had died. According to Almonte, that landlord filed a court action that was resolved with the understanding that Almonte would be given a new lease. Almonte then explained that that landlord did not send him a new lease. Nevertheless, Almonte and his daughters continued to live in the apartment and Almonte continued to pay the monthly rent.

Ariana Almonte was the third and final witness to testify at the trial. She explained she had lived in the apartment her entire life. She also testified that Reyes was her mother, but she did not have any memories of her mother or of living with her mother.

A-1808-19T3

Based on that testimony, the trial judge found the controlling lease was the Lease signed in 1999 by Reyes. The judge then construed the Lease to require Reyes to be a tenant in the apartment with Almonte and their daughters. The judge rejected Almonte's contention that he was a functional tenant. Specifically, the judge found Almonte's testimony not to be credible because he had not brought any documents proving that he was the person paying the rent. Thus, the judge did not find that the Landlord had acquiesced to Almonte's occupancy of the apartment.

On the record, the judge stated that she was ruling for the Landlord. No judgment of possession, however, was included in the record before us. Instead, the record only includes a warrant of removal ordering Almonte and his daughters to move out of the apartment before January 7, 2020. After Almonte appealed, we granted a stay of the judgment of possession and warrant pending this appeal.

## II.

On appeal, Almonte makes three arguments. He contends that the trial judge erred in: (1) not joining him and his daughters as indispensable parties; (2) accepting jurisdiction because the notices were vague and not served directly on him; and (3) rejecting his position that he is a functional tenant.

A-1808-19T3

We hold that Almonte was permitted to intervene to participate as a party. We also hold that the notices were sufficient because Almonte received them, intervened, and testified at trial.[1] We reverse and remand, however, because the trial judge's finding that Almonte was not a functional tenant was inadequate. Moreover, the trial judge failed to properly analyze the governing law concerning functional tenancy.

Under the common law, when a tenant died, the tenancy passed to his or her estate. Maglies v. Estate of Guy, 193 N.J. 108, 120 (2007) (citing Gross v. Peskin, 101 N.J. Super. 468, 469 (App. Div. 1968)). If the lease was a month-to-month tenancy, as the Lease in this case, "then the landlord could terminate the lease by giving one month's notice to the estate's legal representatives." Ibid. (citing Ctr. Ave. Realty, Inc. v. Smith, 264 N.J. Super. 344, 350 (App. Div. 1993)).

The law substantially changed, however, when the Legislature passed the Act. Ibid. (citation omitted). The Act provides that a tenant cannot be removed except when the landlord establishes one of eighteen enumerated grounds for a good cause eviction. Id. at 121 (quoting N.J.S.A. 2A:18-61.1). The grounds for

_____

[1] Under the Act, a landlord cannot obtain a judgment of possession unless it has "made written demand and given written notice for delivery of possession of the premises." N.J.S.A. 2A:18-61.2.

eviction include material breaches of the lease. N.J.S.A. 2A:18-61.1(d) to (e)(1). "When a person is protected by the Act, 'the effective term of the lease is for as long as the tenant wishes to remain, provided he pays the rent . . . and provided there is no other statutory cause for eviction under [the Act].'" Maglies, 193 N.J. at 121 (alterations in original) (quoting Ctr. Ave. Realty, 264 N.J. Super. at 350).

Our Supreme Court has stated that the Act "was designed to protect residential tenants against unfair and arbitrary evictions by limiting the bases for their removal." 447 Assocs. v. Miranda, 115 N.J. 522, 528 (1989) (citations omitted). The Court has also repeatedly stated that the Act is "remedial legislation deserving of liberal construction." Maglies, 193 N.J. at 123 (quoting 447 Assocs., 115 N.J. at 529).

Consistent with the design and liberal construction of the Act, the Court has recognized that an occupant can become a functional tenant protected by the Act. Id. at 125-26. To be recognized as a functional tenant, an occupant must establish three facts: (1) he or she has continuously resided at the premises; (2) he or she "has been a substantial contributor towards satisfaction of the tenancy's financial obligations"; and (3) his or her "contribution has been acknowledged and acquiesced to by" the landlord. Id. at 126.

8

Generally, a challenge to a judgment of possession is reviewed on appeal for abuse of discretion. Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 236 (1998) (citations omitted). Moreover, factual findings made by a judge in a bench trial will usually not be disturbed if they are supported by substantial credible evidence. Slutsky v. Slutsky, 451 N.J. Super. 332, 343-44 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). Nevertheless, when fact findings are not supported by substantial credible evidence we will intervene. Id. at 369 (citing Beck v. Beck, 86 N.J. 480, 496 (1981)).

Here, the trial judge failed to adequately analyze the evidence concerning whether Almonte was a functional tenant. Almonte's unrebutted testimony established that he continuously resided in the apartment since the early 1990's. Indeed, before us the Landlord conceded that fact.

Almonte also testified that he paid the rent every month. He explained that when he was living with Reyes he worked, she did not, and he paid the rent. He also testified that since Reyes vacated the apartment sometime shortly after the 1999 Lease was signed, he continued to pay the rent monthly. The trial judge questioned Almonte's credibility because he did not have documents supporting that position. The record, however, is undisputed that the rent was consistently paid on a monthly basis for years. In that regard, it was undisputed that rent had

9

been received by the Landlord and those payments had been applied to the rent for the apartment where Almonte lived. Even if it was not Almonte paying the rent, then someone was sending those payments on his behalf. That fact still strongly suggests that Almonte was a substantial contributor towards the rent.

Almonte also testified that a prior landlord knew and acquiesced to his financial contributions. He explained that landlord had learned of Reyes' death as early as 2009. He also testified that there had been a court proceeding which had been resolved with him being allowed to stay in the apartment. Most importantly, the record was unrebutted that for years after Reyes' death, the Landlord accepted rent payments for the apartment where Almonte and his daughters lived.

The Landlord offered no evidence to rebut Almonte's testimony. Nevertheless, with virtually no analysis of the testimony presented, the trial judge found that the current Landlord (Golden Apple) had not acquiesced to Almonte's financial contributions. There are two shortcomings in that finding.

First, if a prior landlord accepted payments from Almonte then Almonte became a functional tenant before Golden Apple purchased the building. In other words, the Lease would have been effectively modified and Golden Apple

would be bound by that modification.[2]  At a minimum, the court should have engaged in a more rigorous analysis to determine whether Golden Apple was bound by the acquiescence of a prior landlord.  See Young v. Savinon, 201 N.J. Super. 1, 7-10 (App. Div. 1985) (citing Carteret Props. v. Variety Donuts, Inc., 49 N.J. 116, 127-28 (1967)).

Second, in making the finding that the current Landlord did not acquiesce, the trial judge ignored the undisputed fact that Golden Apple purchased the building in February 2018, and then waited well over one year before it stopped accepting Almonte's payments in July 2019.  That one-and-a-half-year delay raises material facts concerning whether Golden Apple acquiesced to Almonte's payment of the rent for the apartment.

In summary, the trial judge failed to adequately address the evidence that had been presented and the judge's finding that Almonte was not a functional tenant is not supported by substantial credible evidence in the record.

---

[2]  Before us counsel for the Landlord contended that any modification to the Lease had to be in writing pursuant to the statute of frauds.  See Van Horn v. Harmony Sand & Gravel, Inc., 442 N.J. Super. 333, 341 (App. Div. 2015) (citing N.J.S.A. 25:1-12); Willow Brook Recreation Ctr., Inc. v. Selle, 96 N.J. Super. 358, 364 (App. Div. 1967).  Maglies, however, does not require a written modification to establish a functional tenancy.  Such a requirement would allow a landlord to prevent the establishment of a functional tenancy, even when the three-part test in Maglies is satisfied, by refusing to execute a corresponding writing.

Accordingly, we vacate the judgment of possession and the warrant of removal and remand for a new trial. Because the judge who tried the case has already made findings that are inconsistent with the record, we direct that on remand the matter be tried by a new judge.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1808-19T3