**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1880-23

COVENTRY PLACE
OWNER LLC,

    Plaintiff-Respondent,

v.

ADAM GOODMANN,[1]

    Defendant-Appellant.

_____

Submitted April 2, 2025 – Decided June 18, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. LT-008301-23.

Adam Goodmann, appellant pro se.

Goldberg Segalla LLP, attorneys for respondent (Jeremy S. Cole, on the brief).

PER CURIAM

---

[1] Incorrectly plead as Adam Goodman.

Defendant Adam Goodmann appeals from the February 9, 2024 judgment of possession (JOP) entered in favor of plaintiff Coventry Place Owner LLC (Coventry). We affirm.

I.

Goodmann was a tenant in an apartment building owned by Coventry. On March 11, 2021, Coventry sent Goodmann an executed notice of lease renewal indicating if he signed a new lease for June 1, 2021 to May 31, 2022, his rent would be $890 plus $30 for utilities. The notice required Goodmann to make an appointment with the management office to sign a lease. On March 29, 2021, Goodmann accepted the terms by signing the notice but never signed a new lease.

Instead, Goodmann sent Coventry what he considered to be a lease proposal in which he made handwritten edits to the June 1, 2021 to May 31, 2022 lease. Coventry did not agree to or execute the lease proposal but defendant remained in the apartment. When Goodmann did not receive notice from Coventry about renewal for the next lease term, he wrote to the property manager on March 30, 2022, seeking to renew a lease for June 1, 2022 to May 31, 2023.

A-1880-23

Although Coventry considered Goodmann's lease to have expired on May 31, 2022, it sent defendant a notice of lease renewal dated April 1, 2022 requiring Goodmann to execute an emailed lease within twenty days of the notice. The notice advised that if Goodmann did not respond, his lease would renew at the increased market rate of $1,285 per month plus a $100 month-to-month fee. Goodmann did not receive the notice until April 28, 2022 because of a change in Coventry's management company, and he did not execute the lease.

Because Goodmann failed to execute a new lease, he was charged the increased rent and month-to-month fee. However, he continued to pay only the prior lease rate, which resulted in a monthly deficiency.

On June 28, 2022, Coventry delivered to Goodmann's apartment another lease for August 1, 2022 to July 31, 2023, which listed rent at $1,285 per month. Goodmann did not sign that lease.

Goodmann mailed a letter dated August 27, 2022 to the property manager attaching his previous correspondence regarding lease renewal. Goodmann testified he sent the letter because he did not expect a rate increase but Coventry was billing him at "an unexpectedly high rate." Goodmann "understood [his]

A-1880-23

signed renewal letter [wa]s effective [March] 30, 2022," at $890 per month for "the upcoming yearly term."

Coventry sent Goodmann a letter dated April 27, 2023, which he received on May 8, 2023. The letter noted Goodmann's lease expired May 31, 2022, but offered another lease for June 1, 2023 to May 31, 2024, at an increased rate of $1,336 rent. If Goodmann did not sign a lease within thirty days but remained in the apartment, the increased rate would also be subject to a $250 month-to-month fee.

On October 13, 2023, Coventry sent Goodmann a notice to quit and notice of rental increase and reasonable changes via hand delivery, regular and certified mail. The notice indicated Goodmann had not signed a new lease agreement since October 1, 2021, and terminated his lease as of November 30, 2023, at which time he would be required to vacate the property, unless he signed a lease renewal prior to then. The notice stated rent was $1,285, which would be subject to a $250 month-to-month fee if Goodmann failed to sign the enclosed lease by November 30, 2023. Goodmann did not sign the lease.

On December 21, 2023, Coventry filed a verified complaint alleging unpaid, due and owing rent and fees of $6,190.47 and seeking summary possession of the property.

A-1880-23

A bench trial was conducted on February 8 and 9, 2024. Coventry's assistant property manager testified about the lease agreements and payment ledger documenting the rent, fees and defendant's payments. Coventry argued "there [wa]s no[] negotiation with these rental agreements" which, absent a signed lease, converted to a month-to-month tenancy. Goodmann testified he renewed the lease under the previous terms and argued the rent increase notices were invalid and anti-eviction laws prevented the eviction actions.

At the trial's conclusion, the court's oral decision concluded the 2021 to 2022 lease was the last one signed by the parties. The court found the March 11, 2021 lease agreement extended the lease, effective June 1, 2021,[2] even though no lease agreement for this term was signed by both parties.

The court found that, after conclusion of the 2021 to 2022 lease term, Goodmann's lease converted to a month-to-month tenancy and, as a result of his remaining in the apartment for 2022 to 2023, he was responsible for monthly rent of $1,285 plus a $100 month-to-month fee. Effective June 1, 2023, the rent increased to $1,336 plus a $100 month-to-month fee.[3] The trial court also

---

[2] Although the transcript indicates "2022," this appears to be an error.

[3] The court found the $250 month-to-month fee excessive and reduced it to $100.

A-1880-23

allowed water and sewer charges, disallowed pest and trash fees because Goodmann did not have notice of those fees, and disallowed late fees on the month-to-month tenancy because they were not authorized by the lease.

The court then calculated Goodmann was in arrears totaling $8,235.93 and entered a judgment for possession based on the unpaid rent due and owing to Coventry.

## II.

We afford a deferential standard of review to the factual findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). We will not disturb these findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, our review of a trial court's legal determinations is plenary. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).

Absent an agreement to the contrary, when a tenant whose original lease term is at least one month holds over or remains in possession of the leased premises beyond the term of the lease, a month-to-month tenancy is created when the landlord accepts rent. N.J.S.A. 46:8-10; see also Newark Park Plaza

Assocs. v. Newark, 227 N.J. Super. 496, 499 (Law Div. 1987) ("It is well-settled law in New Jersey that when a tenant continues to occupy a premises after the termination of a lease, his status becomes that of a month-to-month holdover tenant."). Moreover, "[t]o increase the rent of a month-to-month tenant, the landlord must serve a notice to quit terminating the old tenancy and another notice offering a new tenancy at an increased rent." Harry's Vill., Inc. v. Egg Harbor Twp., 89 N.J. 576, 583 (1982). "When a landlord gives a proper notice to quit and a notice of rent increase, a tenant, by holding over, creates a new tenancy at the increased rental." Ibid. "In a month-to-month tenancy where there is no written lease, tenants impliedly consent to the rent increases by remaining in possession of the estate after receiving a notice to quit and a notice of rent increase." 447 Assocs. v. Miranda, 115 N.J. 522, 532 (1989).

A landlord may remove a residential tenant under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, upon establishment of one of eighteen enumerated grounds. N.J.S.A. 2A:18-61.1; see, e.g., Starns v. Am. Baptist Ests. of Red Bank, 352 N.J. Super. 327, 331 (App. Div. 2002). "Indeed, this court has observed that '[t]he effect of [the Anti-Eviction Act] is to create a perpetual tenancy, virtually a life interest, in favor of a tenant of residential premises covered by the Act as to whom there is no statutory cause for eviction under

A-1880-23

N.J.S.A. 2A:18-61.1.'" Starns, 352 N.J. Super. at 331 (alterations in original) (quoting Ctr. Ave. Realty, Inc. v. Smith ex rel. Est. of Smith, 264 N.J. Super. 344, 350 (App. Div. 1993)).

A landlord may establish good cause when a tenant fails to pay rent due and owing, N.J.S.A. 2A:18-61.1(a), or a tenant fails to pay rent after a valid notice to quit and notice of increase of rent, provided the increase is not unconscionable and complies with all other laws concerning rent increases, id. -61.1(f).

On appeal, Goodmann argues the eviction action was filed based on the incorrect lease, Coventry's notices were insufficient, and Coventry conceded issues in a prior eviction action. We disagree.

The trial court determined Goodmann's lease expired May 31, 2022 and the parties never entered into another lease. Although Coventry offered new lease agreements to Goodmann several times, he did not execute any of them. And although Goodmann signed a "lease proposal" in September 2021, Coventry did not agree to his handwritten terms or execute the proposed lease.

Thus, the trial court determined that as of May 31, 2022, Goodmann held over and became a month-to-month tenant under N.J.S.A. 46:8-10. Because Goodmann had notice of increased rent before he held over, he impliedly agreed

A-1880-23

to those terms by remaining in possession of the apartment. Coventry was therefore entitled to summary possession of the apartment under N.J.S.A. 2A:18-61.1(a) based on Goodmann's failure to pay the increased rent.

Because the trial court's factual findings are supported by the record and its legal analysis comports with the governing legal principles, we discern no abuse of discretion in its fact finding nor any error in its entry of judgment.

To the extent we have not expressly addressed any remaining issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division