802 A.2d 609 (2001)
353 N.J. Super. 353
T. K., Plaintiff,
v.
LANDMARK WEST, Defendant.
Superior Court of New Jersey, Law Division, Sussex County.
February 9, 2001.
*610 Ruben Laboy, Jr., Somerville, for plaintiff (Somerset Sussex Legal Services).
William N. Dimin, Englewood, for defendant (Spector & Dimin, attorneys).
GRAVES, J.S.C.
This is a case of first impression. The plaintiff, a prospective tenant eligible for Section 8 rental assistance, seeks to compel the defendant, a landlord, to rent her a one-bedroom apartment. For the reasons that follow, the equitable relief requested by plaintiff is granted.
It is stipulated that plaintiff applied to rent a one-bedroom apartment at Landmark West for herself and her 12-year-old daughter in November 2000. Landmark *611 West is a rental complex consisting of approximately 160 one- and two-bedroom apartments available for rent to the general public. The rent for a one-bedroom apartment is $680 per month. At the time she applied, plaintiff was unemployed but receiving Temporary Assistance for Needy Families in the amount of $322 per month. Plaintiff was also receiving $172 per month in food stamps. In addition, plaintiff was eligible to receive housing assistance pursuant to the federal Section 8 rental assistance program, 42 U.S.C.A. § 1437f. "Section 8 provides for rental assistance to low-income tenants. Its purposes are to provide safe, sanitary, and decent housing to low-income families and to promote economically mixed housing." Soliman v. Cepeda, 269 N.J.Super. 151, 155, 634 A.2d 1057 (Law Div.1993). See generally Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 608-09, 725 A.2d 1104 (1999) (describing the Section 8 program).
Upon telephoning the defendant's business office to determine the status of her rental application, plaintiff was told she had been denied "due to credit." Plaintiff then sought assistance from Somerset Sussex Legal Services. Plaintiff's attorney was advised by defendant's manager that plaintiff's application had been denied because of her credit report and because she was unemployed.
On December 4, 2000, plaintiff filed a complaint together with an order to show cause to compel Landmark West to keep a one-bedroom apartment available pending final disposition of the case. Plaintiff's complaint contained the following allegations:
3. Defendant denied plaintiff's application based upon arbitrary reasoning. Defendant alleged that plaintiff has bad credit because of one outstanding doctor bill that is about five years old.
4. Defendant's arbitrary refusal to accept plaintiffs' (sic) § 8 certificate is unlawful and violates N.J.S.A. 2A:42-100.
In a responding certification dated December 18, 2000, defendant's manager noted that approximately ten families at Landmark West receive Section 8 housing assistance. He also provided the following information with respect to plaintiff's rental application:
4. Plaintiff's application for rental was denied predicated upon two reasons:
a) The first reason was due to Plaintiff's credit rating. Appended hereto and made a part hereof as EXHIBIT A, is a copy of Plaintiff's TRW Consumer Credit Report. As evidenced therein, Plaintiff has accounts which are out for collection. These accounts are from 1995 and 1996. (Even though they are of minimal amounts and old, i.e., four-five years old), they indicate credit unworthiness, in view of the following: They are from out of state; they are not substantial dollars; and they have never been paid. It is evident from the foregoing that Plaintiff, by crossing state lines, never had any intentions of paying same.
b) The second reason for denying Plaintiff's application is due to insufficient income. The standards used in determining the sufficiency of income for rental purposes is as follows:
For a two (2) bedroom apartment, an applicant must show an annual income of Thirty Eight Thousand ($38,000.00) Dollars.
For a one (1) bedroom apartment, an applicant must show an annual income of Thirty Two Thousand ($32,000.00) Dollars. (Income would be from all sources, including child support, alimony, rental assistance, etc.) *612 5. The Plaintiff, by her own admissions, does not meet the minimum requirements.
At trial, plaintiff claimed she had been arbitrarily and unlawfully excluded because of the source of her income and rent payment in violation of N.J.S.A. 2A:42-100. Landmark West sought to demonstrate that plaintiff's rental application was justifiably denied because the plaintiff lacked credit worthiness. To review these conflicting claims it is necessary to interpret N.J.S.A. 2A:42-100 which provides in pertinent part as follows:
No person, firm or corporation or any agent, officer or employee thereof shall refuse to rent or lease any house or apartment to another person because of the source of any lawful income received by the person or the source of any lawful rent payment to be paid for the house or apartment.... Nothing contained in this section shall limit the ability of a person, firm or corporation or any agent, officer or employee thereof to refuse to rent or lease any house or apartment because of the credit worthiness of the person or persons seeking to rent a house or apartment.
The defendant, invoking the exception in the statute, contends the plaintiff is not creditworthy. Confronted with the lack of a statutory definition, the court must first determine the meaning of "credit worthiness." "In the absence of a special meaning, the words in a statute are to be given their ordinary and well understood meaning." State v. Ferencsik, 326 N.J.Super. 228, 231, 741 A.2d 101 (App. Div.1999). However, the court must also "afford a construction which considers these words in the context of the entire statute, ascribing to them a common-sense meaning which advances the legislative purpose." Voges v. Borough of Tinton Falls, 268 N.J.Super. 279, 285, 633 A.2d 566 (App.Div.1993), cert. denied, 135 N.J. 466, 640 A.2d 848 (1994). The court's "task is to discern the intent of the Legislature not only from the terms of the Act, but also from its structure, history and purpose." Fiore v. Consol. Freightways, 140 N.J. 452, 471, 659 A.2d 436 (1995).
The stated purpose of the bill which became N.J.S.A. 2A:42-100, et seq. was to "mak[e] it unlawful to refuse to rent a house or apartment to a person because of objections to the person's source of income...." Sponsor Statement to ASSEMBLY NO. 944, Feb. 21, 1980. Upon signing the bill, Governor Brendan Byrne stated, "The bill is intended to protect from housing discrimination welfare recipients, spouses dependent on alimony and child support payments and tenants receiving governmental rental assistance." Office of the Governor, News Release at 1 (Dec. 9, 1981). Plaintiff is undoubtedly within the targeted population that the statute was intended to protect. Furthermore, "Section 8 payments clearly fall within the ambit of N.J.S.A. 2A:42-100." Franklin Tower One, L.L.C. v. N.M., 304 N.J.Super. 586, 589, 701 A.2d 739 (App. Div.1997), aff'd, 157 N.J. 602, 725 A.2d 1104 (1999).
"Where the Legislature's intent is remedial, a court should construe a statute liberally." Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995). "Exceptions to a statutory scheme ... should be construed narrowly." Ibid. N.J.S.A. 2A:42-100 is remedial because it is intended to remedy housing discrimination predicated upon source of income. Therefore, the statute must be liberally construed in favor of the plaintiff and the lack of credit worthiness exception must be narrowly construed.
Landmark West argues that it has absolute discretion to determine credit worthiness *613 and the court has no authority to interfere with its "business judgment." The Connecticut Supreme Court addressed a similar contention and its reasoning is applicable here. "It would be inconsistent with the remedial nature of [the statute] for the legislature to have afforded to landlords carte blanche authority to define the term ["credit worthiness"] so as to qualify for the exception .... Such a construction would swallow the statute whole and render it meaningless." Comm'n on Human Rights & Opportunities v. Sullivan Assoc., 250 Conn. 763, 739 A.2d 238, 253 (1999), reh'g denied, 251 Conn. 924, 742 A.2d 364 (1999).
"Creditworthy" is defined as "being financially sound enough to justify the extension of credit," Merriam-Webster's Collegiate Dictionary (10th ed.2001), or "[h]aving an acceptable credit rating," American Heritage Dictionary of the English Language (4th ed.2000) (credit rating defined as "An estimate of the amount of credit that can be extended to a company or a person without undue risk"). The Assembly Commerce, Industry and Professions Committee stated that the bill "does not deny or interfere with a landlord's legitimate considerations of sufficiency of income or reliability of rent payment by a prospective tenant." Assembly Commerce, Industry and Professions Committee, Statement to ASSEMBLY NO. 944, May 1, 1980 (emphasis added). Credit worthiness, then, relates to a landlord's legitimate concern that a prospective tenant has a reliable and steady source of income to fund rent payments and satisfy the other financial requirements of a lease.
It is undisputed that N.J.S.A. 2A:42-100 applies in this case. Furthermore, plaintiff has established a prima facie showing of discrimination in violation of the statute: (1) plaintiff is in the class of persons N.J.S.A. 2A:42-100 is intended to protect; (2) defendant was aware that plaintiff is a member of the protected class; (3) plaintiff was ready and able to accept defendant's offer to rent or lease; and (4) Landmark West refused to rent an apartment to plaintiff. Therefore, the burden of proof shifts to the defendant to articulate a legitimate, nondiscriminatory business reason for denying plaintiff's application. See Schanz v. Village Apartments, 998 F.Supp. 784 (E.D.Mich.1998) (analysis of burden-shifting in housing discrimination suit); cf. Zappasodi v. N.J. Dep't of Corrections, 335 N.J.Super. 83, 761 A.2d 96 (App.Div.2000) (analysis of burden-shifting in employment discrimination suit).
Defendant's assessment of plaintiff's credit status was based on a one-page TRW Consumer Credit Report which lists two open collection accounts: one reflecting a balance of $335 owed to Carolinas Medical Center E/R from October 1995; the other showing a balance of $99 owed to Charlotte Mecklenburg Health from November 1995. Landmark West never contacted plaintiff's previous landlord even though plaintiff provided the name, address and telephone number on her rental application. In addition, Landmark West failed to utilize any formula or uniform standards when evaluating plaintiff's credit worthiness; that determination was within the sole discretion of defendant's manager. In reaching his decision, the manager testified that he relied primarily on his many years of experience. Thus, the decision-making process was somewhat subjective. For example, the manager testified that an open collection account, no matter how small or how old, results in an automatic denial. However, a charge-off or a bankruptcy, no matter how substantial the amount involved, does not automatically disqualify an applicant. As noted in Bronson v. Crestwood Lake Section 1 Holding *614 Corp., 724 F.Supp. 148 (S.D.N.Y.1989), a "defendant's inconsistent articulation and application of its tenant selection policies cast the sincerity of those policies in a somewhat questionable light." Bronson, 724 F.Supp. at 157.
After viewing plaintiff's credit report, Landmark West concluded that plaintiff, "by crossing state lines," never had any intentions of paying the collection accounts. In response, plaintiff testified she only became aware of the TRW report after her application was rejected and her attorney obtained a copy from Landmark West. With respect to the open collection accounts, plaintiff testified that while visiting her sister in South Carolina she went to a clinic in Charlotte, N.C. for emergency medical treatment, paid a $25 fee at the clinic, was then told that the clinic was not equipped to treat her and was sent to a hospital. Plaintiff testified that all charges should be covered by the $25 fee paid to the clinic; therefore, she does not believe she is responsible for the $434 shown as outstanding on her credit report. Plaintiff's explanation was credible and persuasive. Moreover, it is noteworthy that the outstanding charges were for necessary emergency medical services as opposed to discretionary purchases or charges.
A senior field representative from the New Jersey Department of Community Affairs testified that plaintiff's income and expenses (rent, utilities, food, etc.) are considered in determining how much of the rent Section 8 would pay on her behalf. See generally Cesar E. Torres, The Housing Crisis Facing Low Income Families, 29 Seton Hall L.Rev. 1498 (1999). The representative estimated that Section 8 would cover the full rental payment for a one-bedroom apartment at Landmark West and would even issue a $12 check to be used toward utilities. The Section 8 payments on plaintiff's behalf would be issued directly to the landlord. 42 U.S.C.A. § 1437f(b)(1).
Defendant acknowledged that plaintiff's rent will be paid in full and plaintiff testified she can pay the security deposit. Thus, the defendant has not established any rational relationship between the plaintiff's credit report and Landmark West's legitimate concern that plaintiff has the means to pay the rent. Under these circumstances, Landmark West has failed to establish that plaintiff is not creditworthy. See Kim Johnson-Spratt, Housing Discrimination and Source of Income: A Tenant's Losing Battle, 32 Ind. L.Rev. 457, 460 (1999) (discussing landlord's cash flow concern and the reliability of Section 8 assistance).
While a landlord may have a valid reason extrinsic to credit unworthiness for denying an applicant eligible for Section 8, Landmark West concedes that plaintiff is "otherwise qualified" to rent one of its apartments. 42 U.S.C.A. § 1437f; 24 C.F.R. § 982.307; see Franklin Tower One, 157 N.J. at 622, 725 A.2d 1104 (landlord has right to verify that a tenant is otherwise qualified); Hamilton v. Miller, 477 F.2d 908 (10th Cir.1973) (landlord's refusal to rent because he thought applicant would be a troublesome tenant was nondiscriminatory). Here, however, Landmark West rejected plaintiff's rental application solely for financial reasons. Defendant's manager concedes telling plaintiff's attorney that plaintiff was not eligible because of her credit report and because she was unemployed. Subsequently, the manager certified that plaintiff's application was denied for two reasons: her credit rating and insufficient income. Prior to trial, the landlord withdrew its original claim that plaintiff was disqualified because of her unemployment and its subsequent claim that plaintiff was unfit because of her insufficient income. Nevertheless, *615 at trial defendant's manager expressed concern that should plaintiff lose her Section 8 assistance, she would be unable to make the rental payments herself. Thus, there is no doubt that the plaintiff's economic status, including her unemployment, lack of sufficient income and her participation in the Section 8 program, motivated the defendant to reject the plaintiff.
"[W]e know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Given the landlord's inconsistent and unsubstantiated reasons for not accepting the plaintiff as a tenant, it is not unreasonable to conclude that the plaintiff was arbitrarily and unfairly rejected because of her dependence upon governmental assistance. Such a result is untenable and violates the letter and spirit of N.J.S.A. 2A:42-100.
New Jersey has a "strong public policy of protecting low-income tenants from discrimination." Franklin Tower One, 157 N.J. at 620, 725 A.2d 1104. "The anti-discrimination provision of N.J.S.A. 2A:42-100, which prohibits discrimination against tenants based on `the source of any lawful rent payment,' is one of the legislative enactments by which New Jersey promotes its goal of providing affordable housing to its citizens." Ibid. Therefore, the appropriate remedy is to require Landmark West to enter into a lease agreement with the plaintiff for a one-bedroom apartment. The defendant shall also comply with all reasonable requirements of the Section 8 program necessary to ensure that rental assistance payments will be made on behalf of plaintiff.