Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and
Agee, JJ., and Russell, S.J.

CHEV R. CARTER                          OPINION BY
                            SENIOR JUSTICE CHARLES S. RUSSELL
     v.  Record No. 032208              June 10, 2004

MEADOWGREEN ASSOCIATES,
TRADING AS COVENTRY GARDENS
APARTMENTS

            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      George F. Tidey, Judge

     This appeal turns on the question whether a tenant's

family member, residing in leased property with the consent of

the landlord, succeeds to the tenant's rights upon the death

of the tenant.

     The material facts are undisputed.  In 1997, Meadowgreen

Associates owned and operated a rental apartment complex in

Henrico County subject to a "Housing Assistance Payments

Contract" between Meadowgreen and the federal Department of

Housing and Urban Development (HUD) pursuant to the federal

"Section 8 housing program," 42 U.S.C. §§ 1437 through 1437z-7

(2000 & Supp. I 2003).  The contract provided that apartments

be leased by Meadowgreen directly to tenants on a HUD-approved

form of lease.  HUD would then subsidize the rent by paying

Meadowgreen that portion of the contract rent in excess of the

amount the tenant was able to pay, subject to certain

limitations.

Meadowgreen leased a three-bedroom apartment to Martha Carter for a one-year term beginning in November, 1997. The lease provided that it would become a month-to-month lease at the expiration of the original term, but that Meadowgreen could not terminate the lease except under specific circumstances, not pertinent here, or for "other good cause." The lease further provided that termination for "other good cause" could only be effective at the "end of any initial or successive term."

After the expiration of the initial term, Martha Carter continued to live in the apartment as a month-to-month tenant. Although she was the sole tenant, her son, Chev R. Carter, who was 17 years old in 1997, lived there with her and was named in the lease as one of the tenant's household, along with a daughter then 14 years old. Martha Carter died on November 30, 2002. The lease was silent as to the effect of a tenant's death.

Chev Carter reported his mother's death to Meadowgreen on December 2, 2002. On the same day, Meadowgreen mailed to and posted on the front door of the apartment a notice addressed to "Martha Carter (deceased)" stating in part: "Due to the death of Martha Carter her lease will end on December 31, 2002." Chev Carter, who was then the sole occupant of the apartment, told Meadowgreen's manager that he would like to

2

remain.  He was informed that he did not qualify for a three-bedroom apartment by himself, but that he might apply for a smaller unit.  He filled out an application but Meadowgreen denied it because of Carter's poor credit reports.

Martha Carter had paid her portion of the rent through November 2002, but no rent was received from anyone on the tenant's behalf for the seven months from December 2002 through June 2003.  Meadowgreen continued to list Martha Carter as the tenant during that period and continued to collect HUD's subsidy for the federal share of her rent.

On January 31, 2003, Meadowgreen filed an unlawful detainer proceeding in the general district court against Chev R. Carter.  On February 14, 2003, the court entered judgment for possession.  Carter appealed to the circuit court, where the case was tried to a jury, resulting in a verdict for Meadowgreen.  The court entered judgment on the verdict, granting Meadowgreen possession, costs, and seven months accrued rent amounting to $2,105.00, to be paid out of the bond posted to perfect Carter's appeal from the general district court.[1]  We awarded Carter an appeal.

---

[1] The evidence at trial was that Carter remained in possession of the apartment, but that during his mother's lifetime he was there "rarely" and that "he comes and goes."

3

Carter contends that he succeeded to his mother's rights under the lease upon her death, becoming a month-to-month tenant; that the notice given by the landlord was defective because it gave him 29 days notice instead of the 30 days required by the lease; that the notice failed to inform him of certain rights granted to a tenant under the lease; that the landlord had waived the right to terminate the lease by accepting subsidy payments from HUD after Martha Carter's death and failing to notify HUD of her death; and that the trial court erred in applying part of his appeal bond to rent and court costs.

Carter argues that federal law entitles him to succeed to his mother's rights under the lease. He bases this contention upon the "Declaration of policy" and the definition of "families" contained in Subchapter I of Title 42, U.S.C.:

It is the policy of the United States —

(1) to promote the general welfare of the Nation by employing the funds and credit of the Nation, as provided in this Act —

(A) to assist States and political subdivisions of States to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families;

(B) to assist States and political subdivisions of States to address the shortage of housing affordable to low-income families. . . .

42 U.S.C. § 1437(a) (2000); and

4

When used in this chapter:

. . . .

   (3) . . .

      (A) SINGLE PERSONS.  The term "families" includes
      families consisting of a single person in the case
      of . . . (iv) the remaining member of a tenant
      family. . . .

42 U.S.C. § 1437a(b)(3)(A)(iv) (2000).

Carter contends that, regardless of any state or common law to the contrary, the foregoing provisions result in the succession of a "remaining member of a tenant family" to the rights of a deceased tenant in "Section 8 housing."  We do not agree.

Congress included many provisions in the statutes governing "Section 8 housing" to regulate landlord-tenant relationships, but made no express provision for the devolution of a tenant's leasehold interest upon the tenant's death.  The "Declaration of policy" quoted above sets forth the constitutional foundation for the decision by Congress to "employ[] the funds and credit of the Nation . . . to assist States" for the purposes enumerated.  The definition of "families" sets forth the classes of persons intended to be benefited by the statutory scheme.  Congress did not, however, undertake a total re-writing of state landlord-tenant law as it may apply to "Section 8 housing."  We may assume that where

5

the federal law is silent, the intent of Congress was to leave the applicable state law undisturbed.[2]

In Virginia, the death of a tenant for a fixed term does not terminate a lease in effect at the time of death.  The deceased tenant's interest passes to her estate, and her personal representative becomes liable for the rent until the end of the term.  Hutchings v. Commercial Bank, 91 Va. 68, 77, 20 S.E. 950, 953 (1895).  Therefore, Chev Carter did not succeed to his mother's rights under the lease and was not entitled to the notice provisions that the lease afforded to a tenant.  He made no showing of authority to hold the premises as a subtenant under his mother's estate.  Because he unlawfully detained possession of the apartment for the seven-month period from December, 2002 through June, 2003, the trial court correctly applied his appeal bond to the resulting damages sustained by the landlord.  Accordingly, we will affirm the judgment.

Affirmed.

---

[2] See generally Ayers v. Philadelphia Housing Auth., 908 F.2d 1184, 1189 (3rd Cir. 1990) (preemption of state law occurs in one of three ways:  When Congress explicitly states that it is doing so, when Congress uses language indicating its intention to completely occupy a field, or when Congress enacts a law in actual conflict with state law).

6