876 A.2d 834 (2005)
378 N.J. Super. 588
John PASQUINCE, Plaintiff-Appellant,
v.
BRIGHTON ARMS APARTMENTS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 2005.
Decided June 30, 2005.
*836 Scott R. Conover, Toms River, argued the cause for appellant (Ocean-Monmouth Legal Services, attorney; Mr. Conover, of counsel and on the brief).
Christopher J. Hanlon, Freehold, argued the cause for respondent (Hanlon & Niemann, attorneys; Mr. Hanlon and Andrea I. Bazer, of counsel and on the brief).
Feinstein, Raiss, Kelin & Booker, West Orange, attorneys for amicus curiae New Jersey Apartment Association (Gary D. Gordon and Tracey Goldstein, on the brief).
Before Judges PETRELLA, LINTNER and YANNOTTI.
The opinion of the court was delivered by
PETRELLA, P.J.A.D.
Plaintiff John Pasquince appeals from a decision in the Special Civil Part, following a bench trial, concluding that he had been properly rejected as a proposed tenant by Brighton Arms Apartments due to his lack of creditworthiness, rather than because he was a recipient of Section 8[1] housing assistance. Plaintiff's summary proceeding application under R. 4:67-2 on the basis of a claim of violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-12(g)(4), was rejected.
On appeal, Pasquince argues that the trial judge erred in: (1) concluding that a landlord may consider a legitimate assessment of creditworthiness as a valid issue to reject a prospective Section 8 tenant's application under the amended LAD Section; (2) finding that he failed to prove that the poor credit history defense was a pretext for discrimination; and (3) rejecting his rental application based solely on poor "creditworthiness" where the government has guaranteed payment of a "substantial portion" of the rent.
Pasquince suffers from a medical condition which confines him to a wheelchair. He receives approximately $556 per month in combined social security disability insurance (SSD) and supplemental security income (SSI). On March 24, 2004, Pasquince submitted an application to rent a one-bedroom apartment on the first floor, which had a concrete ramp for wheelchair access, in the Brighton Arms Apartments' complex. The unit rental was $915 per month. The record indicates that Brighton *837 Arms consists of 428 units, accepts Section 8 tenants, and presently has between thirteen and sixteen residents who receive Section 8 subsidies.
At the time Pasquince completed the rental application he presented Brighton Arms with copies of the Section 8 housing voucher and verification of his income from SSD and SSI. Pasquince's Section 8 housing voucher would cover $774 per month of the rent, leaving him responsible for the remaining $141 per month. He also told Brighton Arms about his poor credit history and discussed the possibility of his sister cosigning the lease. Although she initially agreed to cosign the lease, his sister subsequently withdrew her consent.
Brighton Arms has a written policy to obtain credit checks on all applicants. It also imposes minimum income requirements and performs criminal background checks on applicants who pass the initial credit check. However, Brighton Arms exempts Section 8 applicants from its minimum income requirements because it may not discriminate against such applicants based on the source of their income. It does not exempt Section 8 applicants from other checks and its policy is to deny rental applications based upon poor credit history. The credit report on Pasquince indicated numerous unpaid obligations, including $2,922 owed to a prior landlord who had evicted Pasquince, and unpaid medical, utility and credit card bills.
Pasquince attributed his credit difficulties to the window of time between the onset of his disability and the loss of his employment in 2000-2001, and the date in 2003 he was awarded SSD and SSI benefits. He asserted that since he received approval for SSD and SSI payments he had begun to resolve his poor credit history and get his life back on track.
Brighton Arms denied Pasquince's rental application based upon his poor credit history and informed him of his right to contact the consumer reporting agency to dispute the accuracy of his credit report. At the hearing, Brighton Arms' representative explained to the trial judge that Pasquince's credit report raised concerns as to whether he would have the ability or inclination to pay his portion of the rent, notwithstanding receipt of Section 8 housing assistance funds.
In an attempt to rebut poor credit history as a basis for his application denial, Pasquince argued that two of Brighton Arms' Section 8 tenants had poor credit histories. However, Brighton Arms distinguished those tenants' credit histories. One tenant did not have any bad debt write-offs, and except for a child support collection account, the debts were medical. Brighton Arms indicated that it gives less weight to medical collection items because they are often disputed with Medicare and remain open for long periods of time before they are resolved. With respect to the second tenant, she had been employed at the same job for twenty-four years and her poor credit resulted from a personal bankruptcy filed in 1992 with her husband.
The trial judge rejected Pasquince's arguments and found no evidence that Brighton Arms discriminated against him on the basis of his Section 8 status. The judge filed a comprehensive letter opinion on June 21, 2004.

I.
The factual findings of a trial judge are disturbed only where they are unsupported by competent evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). We review legal conclusions de novo. Manalapan Realty, LP v. Township Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). We affirm *838 Judge Sullivan's decision, and add the following discussion with respect to Pasquince's argument that the 2002 amendment of the LAD statute, including the deletion of a reference in a repealed statute to creditworthiness, should give rise to a different result.
Prior to September 15, 2002, N.J.S.A. 2A:42-100 provided, in pertinent part:
No person, firm or corporation or any agent, officer or employee thereof shall refuse to rent or lease any house or apartment to another person because of the source of any lawful income received by the person or the source of any lawful rent payment to be paid for the house or apartment.... Nothing contained in this section shall limit the ability of a person, firm or corporation or any agent, officer or employee thereof to refuse to rent or lease any house or apartment because of the creditworthiness of the person or persons seeking to rent a house or apartment.

[N.J.S.A. 2A:42-100 (repealed).]
This statute was repealed by L. 2002, c. 82, § 7 (effective September 5, 2002). However, the same enactment amended the LAD to prohibit discrimination based upon an individual's source of lawful income used for rental or mortgage payments. L. 2002, c. 82, § 3 (effective September 5, 2002). Among this legislation's amendments to the LAD was the addition of N.J.S.A. 10:5-12(g)(4), which currently provides:
It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
. . . .
g. For any person, including but not limited to, any owner, lessee, sublessee, assignee or managing agent of, or other person having the right of ownership or possession of or the right to sell, rent, lease, assign, or sublease any real property or part or portion thereof, or any agent or employee of any of these:
. . . .
(4) To refuse to sell, rent, lease, assign, or sublease or otherwise to delay or to withhold from any person or group of persons any real property or part or portion thereof because of the source of any lawful income received by the person or the source of any lawful rent payment to be paid for the real property;. . .
The Legislature obviously repealed N.J.S.A. 2A:42-100 and evinced an intent to move its provisions to the LAD. The effects of moving the non-discrimination provision to the LAD were to significantly increase the civil penalties available for discrimination of this type, and to give enforcement authority to the housing authorities, the Division on Civil Rights, and the Attorney General. Press Release, Office of Governor (Sept. 5, 2002); Sponsors' Statement to S.631 (enacted as L.2002, c. 82); Statement of Senate Judiciary Committee to S.631 (enacted as L. 2002, c. 82); Sponsors' Statement to A.710 (enacted as L. 2002, c. 82); Statement of Assembly Housing and Local Government Committee to A.710 (enacted as L. 2002, c. 82).
Obviously, the language in N.J.S.A. 10:5-12(g)(4) is not an exact replica of the repealed statute, N.J.S.A. 2A:42-100, because it does not state that, notwithstanding the non-discrimination provision, landlords may still consider creditworthiness as a criteria for accepting or rejecting rental applicants. Nevertheless, as discussed hereinafter, it is well established that creditworthiness is a legitimate, non-discriminatory criteria which landlords are permitted to consider when evaluating *839 prospective tenants, including recipients of Section 8 housing assistance.
There is no evidence that, by repealing N.J.S.A. 2A:42-100, the Legislature intended to change the status quo, and, absent a clear manifestation to the contrary, the judiciary will not impute to the Legislature an intent to change established law. State v. Dalglish, 86 N.J. 503, 512, 432 A.2d 74 (1981); In re Formal Complaint of Borough of Glen Rock Against Village of Ridgewood, 25 N.J. 241, 249, 135 A.2d 506 (1957), overruled on other grounds, City of N. Wildwood v. Bd. Of Comm'rs of City of Wildwood, 71 N.J. 354, 365 A.2d 465 (1976); Caldwell v. Township of Rochelle Park, 135 N.J.Super. 66, 74, 342 A.2d 583 (Law Div.1975) ("Generally, there is a presumption against legislative intent to effect a change of substance by a revision of laws, and that presumption is not necessarily overcome by mere change of phraseology, or addition or omission of words."). Cf., Singleton v. Consol. Freightways Corp., 64 N.J. 357, 362, 316 A.2d 436 (1974) ("There is a presumption against a legislative intention to effect a change in substance of a statute unless the change is expressed in language admitting of no reasonable doubt of its purpose.").
The legislative history does not suggest that there was any intent by the Legislature to eliminate creditworthiness as an appropriate selection criteria for Section 8 tenants. Rather, it suggests that the statutory amendments were intended to codify in the LAD the Court's decision in Franklin Tower One, LLC v. N.M., 157 N.J. 602, 618-623, 725 A.2d 1104 (1999), which held that, under N.J.S.A. 2A:42-100, landlords were prohibited from refusing to rent to families or individuals solely because of the use of a Section 8 voucher to assist in the payment of rent. Press Release, Governor (Sept. 5, 2002); Sponsors' Statement to S.631 (enacted as L. 2002, c. 82); Statement of Senate Judiciary Committee to S.631 (enacted as L. 2002, c. 82); Sponsors' Statement to A.710 (enacted as L. 2002, c. 82); Statement of Assembly Housing and Local Government Committee to A.710 (enacted as L. 2002, c. 82). See also, T.K. v. Landmark West, 353 N.J.Super. 353, 359-363, 802 A.2d 609 (Law Div.2001) (holding that defendant unlawfully discriminated against plaintiff based upon her receipt of Section 8 housing assistance, in violation of N.J.S.A. 2A:42-100 (repealed)), aff'd, 353 N.J.Super. 223, 802 A.2d 527 (App.Div.2002).
In Franklin Tower, supra (157 N.J. at 611, 725 A.2d 1104), the Court also recognized that, under federal law, landlords are permitted "to evaluate the fitness of Section 8 recipients as they would any other prospective tenant." The Court also stated:
[W]e acknowledge that a landlord approached by a prospective tenant eligible for Section 8 assistance has the full right to screen and review the tenant's references, background, employment and rental history to verify that the tenant is otherwise qualified to reside in the landlord's building. See 42 U.S.C.A. § 1437f(d)(1)(A); 24 C.F.R. § 982.307.
[Id. at 622, 725 A.2d 1104.]
As noted in Franklin Tower, federal law explicitly recognizes the right of landlords to perform background checks, including credit checks, on prospective Section 8 tenants. Id. at 610-611, 725 A.2d 1104. Federal law provides that landlords are responsible for the evaluation and selection of Section 8 tenants. 42 U.S.C.A. § 1437f(d); 24 C.F.R. § 982.452(b)(1). Furthermore, 24 C.F.R. § 982.307 provides criteria for the screening of Section 8 tenants and states, in pertinent part:
Tenant screening.

*840 (a) PHA option and owner responsibility.
. . . .
(3) The owner is responsible for screening of families on the basis of their tenancy histories. An owner may consider a family's background with respect to such factors as:
(i) Payment of rent and utility bills;
. . . .
(v) Compliance with other essential conditions of tenancy.
[24 C.F.R. § 982.307.]
Cf., Baldwin v. Housing Authority of City of Camden, N.J., 278 F.Supp.2d 365, 375-377 (D.N.J.2003) (the Housing Act's implementing regulations permit the use of creditworthiness as a screening criterion for issuing Section 8 vouchers).
Moreover, both the U.S. Department of Housing and Urban Development (HUD) and the Department of Community Affairs (DCA) have published documents encouraging landlords to utilize credit checks and rental history as means by which to screen rental applications submitted by recipients of Section 8 housing assistance. See Appendix A.
It is significant that both HUD and the DCA, the agencies responsible for administering the Section 8 program, consider that landlords may take into account the creditworthiness of Section 8 applicants. Courts typically give deference to agencies' construction of the statutory schemes they are entrusted to administer. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-845, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694, 703-704 (1984). Similarly, courts typically defer to the expertise of agencies in technical matters which lie within their special competence. New Jersey Chapter of Nat'l Ass'n of Indus. & Office Parks v. New Jersey Dept. of Envt'l Prot., 241 N.J.Super. 145, 165, 574 A.2d 514 (App.Div.), certif. denied, 122 N.J. 374, 585 A.2d 379, 380 (1990); Application of Boardwalk Regency Corp. for a Casino License, 180 N.J.Super. 324, 333-334, 434 A.2d 1111 (App.Div.1981), modified, 90 N.J. 361, 447 A.2d 1335 (1982); DiBlasi v. Board of Trustees, 315 N.J.Super. 298, 301-302, 718 A.2d 241 (App.Div.1998).
Pasquince nonetheless contends that it is unlawful for landlords to reject Section 8 tenants based upon poor credit histories, relying on an unpublished Law Division opinion provided in his appendix, Reed v. Rustic Village Apartments, DC-4136-02M (Law Div. Jan. 14, 2003). In Reed, the plaintiff's rental application had been denied based in part upon her poor credit history, notwithstanding that her Section 8 voucher would pay more than eighty percent of her rent, and her income was sufficient to cover her portion of the monthly rent. The landlord was ordered to reconsider the plaintiff's rental application without an automatic rejection based upon her creditworthiness, but the judge in Reed also stated that

a verified previous poor payment history as to rent for a residential apartment or rental home, or a bad reference as to the applicant's behavior or actual behavioral problems of the applicant or the applicant's family that are shown to have existed at such a home, are appropriate factors to be considered by the landlord as a reason to reject an applicant. (emphasis added).
Based upon Reed, Pasquince argues that it is always arbitrary and capricious to consider a Section 8 rental applicant's credit history because the Section 8 program will be paying the large majority of the tenant's rent obligation.
*841 We recognize that an unpublished trial court opinion is hardly legal precedent. However, we reject the holding in Reed, that landlords may not consider a Section 8 tenant's creditworthiness where the Section 8 voucher would be paying 50% or more of the monthly rent as inconsistent with federal law. Such a holding is also contrary to common sense. The prospective tenant is still responsible for the payment of some portion of the rent, and, if the applicant has a history of not paying his or her financial obligations, it is logical and reasonable for a landlord to conclude that the applicant might avoid the rent obligation, no matter how small the amount. Moreover, the rent subsidy could be terminated, in which case the tenant would be responsible for the entire rent obligation. See, e.g., Edward Gray Apartments v. Williams, 352 N.J.Super. 457, 467, 800 A.2d 259 (App.Div.2002) (tenant evicted for not paying her rent obligation after her Section 8 subsidy was terminated).
Even under Reed's reasoning, Brighton Arms acted appropriately by denying Pasquince's rental application based upon his negative credit report. His credit history reflected a prior eviction and the prior non-payment of rent and utility bills. Even Reed recognized that such factors would justify a landlord's rejection of a rental application submitted by a recipient of Section 8 housing assistance.
Accordingly, in the case before us, Judge Sullivan did not err in concluding that it was lawful for Brighton Arms to rely upon creditworthiness as a selection criteria for Section 8 tenants, and it did not violate the law by relying upon plaintiff's poor credit history in rejecting his rental application.

II.
The record also supports Judge Sullivan's conclusion that Brighton Arms did not use creditworthiness as a pretext to discriminate against plaintiff based upon his receipt of Section 8 housing assistance, thereby violating N.J.S.A. 10:5-12(g)(4) the ultimate issue in this case. In order to prove discrimination, a plaintiff must first establish a prima facie case showing that:
(1) plaintiff is in the class of persons [the statute] is intended to protect;
(2) defendant was aware that plaintiff is a member of the protected class;
(3) plaintiff was ready and able to accept defendant's offer to rent or lease; and
(4) [defendant] refused to rent an apartment to plaintiff.
[T.K., supra (353 N.J.Super. at 360, 802 A.2d 609) (applying former N.J.S.A. 2A:42-100, now repealed).]
The burden of production[2] then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for denying the plaintiff's rental application. If the defendant meets this burden of production, the plaintiff then bears the burden of proving that the defendant's articulated reason was merely a pretext for unlawful discrimination. Ibid. See also, Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447-450, 867 A.2d 1133 (2005) (discussing burden-shifting *842 scheme in context of alleged employment discrimination under the LAD).
In T.K., supra (353 N.J.Super. at 360, 802 A.2d 609), the judge found that the plaintiff established a prima facie case of discrimination. He also found that the defendant's articulated reason for rejecting the plaintiff's rental applicationthe plaintiff's lack of creditworthinesswas unsupported by the record and merely a pretext to discriminate against the plaintiff based upon her receipt of Section 8 housing assistance. Id. at 361-363, 802 A.2d 609.
On appeal, we affirmed and acknowledged that creditworthiness was a legitimate criteria for landlords when considering prospective tenants, including Section 8 tenants, but found no basis for overruling the determination that, under the circumstances, defendant's reliance upon the plaintiff's poor credit history lacked credibility. T.K., supra (353 N.J.Super. at 225, 802 A.2d 527).
T.K. is distinguishable from the case before us. Here, Brighton Arms consistently maintained that the reason it rejected Pasquince's rental application was his poor credit history. Moreover, unlike T.K., the record supports Brighton Arms' assessment of Pasquince's credit history and the rejection of his rental application on that basis.
Pasquince's credit history reflects not only unpaid medical bills whose validity plaintiff does not dispute, but also reflects negative information about Pasquince's rental history, including a prior eviction and the failure to pay rent and utility obligations. Moreover, unlike the rental applicant in T.K., Pasquince would be responsible for a portion of his rent obligation.
Pasquince failed to show that Brighton Arms used his poor credit history as a pretext for discrimination based upon Section 8 status. The record reflects that Brighton Arms has Section 8 tenants. Moreover, unlike in T.K., Brighton Arms maintains a written set of standards for assessing a prospective tenant's credit history. While the record reflects that Pasquince made out a prima facie case of discrimination and Brighton Arms may have made exceptions to its creditworthiness standards when admitting two of its Section 8 tenants, that does not establish an intent to discriminate against Pasquince based upon his Section 8 status. The situation might be different if there was evidence that Brighton Arms deviated from its creditworthiness criteria for non-Section 8 applicants. However, there is no such evidence in this case.
Affirmed.

Appendix A

Section 8 Housing Program Guidelines for Landlords
4-7 Screening for Suitability

. . . .
E. Permitted Screening Criteria Commonly Used by Owners

1. Overview. Owners are permitted to screen applicants for suitability to help them to determine whether to accept or deny an applicant's tenancy. Owners should consider at least developing screening criteria related to the following factors and may establish other criteria not specifically prohibited in paragraphs 4-8 below. All screening criteria adopted by the owner must be described in the tenant selection plan and consistently applied to all applicants.
2. Screening for credit history. Examining an applicant's credit history is one of the most common screening activities. The purpose of reviewing an *843 applicant's credit history is to determine how well applicants meet their financial obligations. A credit check can help demonstrate whether an applicant has the ability to pay rent on time.

a. Owners may reject an applicant for a poor credit history, but a lack of credit history is not sufficient grounds to reject an applicant.
b. As part of their written screening criteria, and in order to ensure that all applicants are treated fairly, owners should describe the general criteria they will use for distinguishing between an acceptable and unacceptable credit rating.
c. Owners may determine how far back to consider an applicant's credit history. Owners generally focus on credit activity for the past three to five years. It is a good management practice to give priority to current activity over older activity.
d. Owners may have to justify the basis for a determination to deny tenancy because of the applicant's credit rating, so there should be a sound basis for the rejection.
. . . .
4-27 Implementing Screening Reviews

B. Screening for Credit History

1. Owners may reject an applicant for a poor credit history, but owners must not reject an applicant for lack of a credit history.
2. There are two primary sources that owners use to determine credit history.
a. Previous landlords. It is good practice to contact the applicant's previous landlords to determine if the applicant paid rent on time.

b. Credit report companies. There are a number of private companies that can provide owners with a credit report on an applicant. These private companies charge a fee for this service. Owners may use such services but may not pass on these fees to the applicant. At an additional cost, some companies can provide additional information by searching public databases for criminal records. Owners must be consistent in the use of credit reporting services.
C. Screening for Rental History

1. The most common method for assessing rental history is to ask for comments from the applicant's current and former landlords. When collecting information from landlords, it is important to collect objective information. . . .
2. Information that an owner may learn from a landlord that may be grounds for rejecting an applicant includes:

a. Failure to cooperate with recertification procedures;
b. Violations of house rules;
c. Violations of the lease;

 History of disruptive behavior;
 Poor housekeeping practices;
 Previous evictions;

 Termination of assistance for fraud; or
 Conviction for the illegal manufacture, distribution, or use of controlled substances.
[HUD Directive Number 4350.3, Chapter 4 (Waiting List and Tenant Selection), Sections 4-7E and 4-27B (emphasis added) (available at www.hudclips.org).]
Similar to HUD, the DCA advises landlords:
Once a Housing Choice Voucher holder has indicated that they wish to rent your property, you must decide whether or not you want to rent to this tenant. We strongly advise you to do a thorough background check on all potential tenants *844 before you decide whether or not you will rent to them.

The background check should include an application requiring the tenant to provide information such as their name, social security number, past rental history including prior landlords, information on employment, income, savings, and personal and credit references.
. . . .
You should also consider using one of the many services available to landlords that will give you the information needed to make an informed decision about renting to a potential tenant. For example, services will tell you whether or not a tenant has ever been evicted, has a criminal record, or has a bad credit history.
[A Landlord's Guide to the Section 8 Housing Program, at p. 4 (Sept.2003) (emphasis added) (www.nj.gov/dca/publications).]
NOTES
[1] The Section 8 housing choice voucher program is funded by the U.S. Department of Housing and Urban Development and administered by the New Jersey Department of Community Affairs, Division of Housing and Community Resources. It provides financial assistance to eligible individuals so that they may rent privately owned housing. An individual deemed eligible for Section 8 housing assistance is issued a housing choice voucher which verifies eligibility for assistance and that money is being set aside to assist the individual with paying his or her rent.
[2] In T.K., the court erroneously refers to defendant's burden as a burden of proof. T.K., infra, 353 N.J.Super. at 360, 802 A.2d 609. In actuality, plaintiffs alleging discrimination bear the burden of proof at all stages of the litigation. The only burden which shifts to the defendant (and then only if a plaintiff makes out a prima facie case of discrimination), is a burden of production, i.e., the burden of articulating a legitimate, non-discriminatory reason for the allegedly discriminatory decision. See, e.g., Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449-450, 867 A.2d 1133 (2005).