901 A.2d 971 (2006)
386 N.J. Super. 449
Robert MAGLIES, Plaintiff-Appellant,
v.
ESTATE OF Bertha GUY, Defendant-Respondent, and
Sherri Jennings, Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 28, 2006.
Decided July 14, 2006.
*972 Robert Maglies, appellant pro se.
Central Jersey Legal Services, Inc., attorneys for respondents (Michael Gildenberg, on the brief).
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether a surviving family member of a deceased tenant whose rental payments were subsidized under the federal Section 8 housing assistance program is entitled to succeed to the decedent's tenancy rights under the statutes and regulations governing the Section 8 program or under the New Jersey Anti-Eviction Act. We conclude that such a surviving family member is not entitled to succession rights to the decedent's tenancy under either federal or state law.
Bertha Guy rented an apartment in a four-unit dwelling in New Brunswick from plaintiff Robert Maglies. In 1991, Guy began participating in the Section 8 Housing Choice Voucher Program, under which she received a rent subsidy funded by the United States Department of Housing and Urban Development (HUD). This subsidy was paid pursuant to a "Housing Assistance Payment Contract" between plaintiff, Guy and the Department of Community Affairs (DCA), which administers the Section 8 program for HUD as a public housing agency. See Pasquince v. Brighton Arms Apts., 378 N.J.Super. 588, 591 n.1, 876 A.2d 834 (App.Div.2005). In 2005 the rent was $647 per month, with Guy paying $233 and the Section 8 subsidy paying the remaining $414.
In 2001, Guy's daughter, intervenor Sherri Jennings, moved into the apartment. Jennings was not a party to the lease or the Housing Assistance Payment Contract.[1] However, she was designated *973 in both documents as an occupant of the household.
Guy died on March 30, 2005, leaving Jennings as the sole occupant of the apartment. Jennings failed to make timely payment of the rent for April 2005. When Jennings subsequently attempted to tender Guy's share of the rent, plaintiff refused to accept it because he did not want to lease the apartment to Jennings, who has a poor credit history and also allegedly suffers from psychological problems that prevent her from taking care of herself or the apartment.[2]
After Guy's death, Jennings moved her twenty-five-year-old daughter into the apartment to help care for her. Jennings' granddaughter also may be occupying the apartment.
Based on Jennings' failure to pay the April rent, plaintiff brought this action against Guy's estate for summary dispossession for nonpayment of rent. The trial court permitted Jennings to intervene and subsequently converted the case into an eviction action in which both parties sought a determination of Jennings' right to retain possession of the apartment. See Ctr. Ave. Realty, Inc. v. Smith, 264 N.J.Super. 344, 346, 624 A.2d 996 (App. Div.1993). However, the Special Civil Part retained jurisdiction.
The trial court concluded in a brief oral opinion that under the federal statutes and regulations governing the Section 8 housing subsidy program, Jennings "was a bona fide remaining member of the tenant family at the time Ms. Guy died . . . [and] shall enjoy all occupancy rights to which she was entitled prior to her mother's death, since a remaining family member's occupancy rights are not terminated by the death of any member." Accordingly, the court ordered plaintiff to allow Jennings to continue occupancy of the apartment provided she pays the rent. The court further ordered that Jennings' rental payments, which were being held in escrow by Central Jersey Legal Services, should be released to the plaintiff, who could accept the rent without waiving his right to appeal. Although Jennings had argued that she was also entitled to continue her occupancy of the apartment under the New Jersey Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, the trial court did not address this point.
On July 11, 2005, the trial court entered an order that states in pertinent part:
2. Sherry Jennings was a bona fide family member of Bertha Guy who was living in the unit with the permission of the plaintiff.
3. As a remaining family member, Sherry Jennings can continue to occupy the unit. Her right of occupancy is not terminated by the end of the lease or by the death of Bertha Guy.
4. Sherry Jennings can remain as an occupant as long as she timely pays her rent.
On appeal, plaintiff argues that neither the federal statutes and regulations governing the Section 8 housing assistance program nor the Anti-Eviction Act confer any right upon Jennings to continue occupancy of the apartment plaintiff leased to her mother. We agree and therefore reverse *974 the order allowing Jennings to succeed to Guy's tenancy.

I
Initially, we note that apart from the statutes and regulations governing the Section 8 housing assistance program and the Anti-Eviction Act, plaintiff clearly would be entitled to refuse to enter into a lease with Jennings and to evict her from the apartment he had rented to her mother. The only lease between plaintiff and Guy admitted into evidence expired on March 31, 2002. Therefore, Guy was a holdover tenant on a month-to-month tenancy at the time of her death. N.J.S.A. 46:8-10. Although Guy's estate would have succeeded to her tenancy under the common law, plaintiff could have terminated the tenancy by giving one month's notice. See Ctr. Ave. Realty, supra, 264 N.J.Super. at 349-50, 624 A.2d 996. The question is whether the statutes and regulations relied upon by Jennings change this common-law rule.

II
The Section 8 housing assistance program is a federal program that provides rental assistance to low-income families for the purposes of helping those families obtain "a decent place to live" and "promoting economically mixed housing." 42 U.S.C.A. § 1437f(a); see Bakos v. Flint Housing Comm'n, 746 F.2d 1179, 1180 (6th Cir.1984). The Secretary of HUD "is authorized to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units[.]" 42 U.S.C.A. § 1437f(b)(1). The governing statute provides that "[t]he amount of the monthly assistance payment with respect to any dwelling unit shall be the difference between the maximum monthly rent which the contract provides that the owner is to receive for the unit and the rent the family is required to pay . . . ." 42 U.S.C.A. § 1437f(c)(3) (emphasis added). Eligibility for the voucher program, under which the Secretary of HUD "provide[s] assistance to public housing agencies for tenant-based assistance[,]" is determined by family income. 42 U.S.C.A. § 1437f(o)(4),(5).
A contract between a public housing agency and the owner of an existing housing unit for rental assistance payments must provide that "the selection of tenants shall be the function of the owner[.]" 42 U.S.C.A. § 1437f(d)(1)(A); see also 42 U.S.C.A. § 1437f(o)(6)(B). The regulations governing the Section 8 housing voucher program also provide that "[t]he owner is responsible for screening and selection of the family to occupy the owner's unit." 24 C.F.R. § 982.307(a)(2). Our Supreme Court has observed that "the federal regulations indicate that the selection of tenants by landlords is meant to permit landlords to evaluate the fitness of Section 8 recipients as they would any other prospective tenant." Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 611, 725 A.2d 1104 (1999); see also Pasquince, supra, 378 N.J.Super. at 593-99, 876 A.2d 834. "Owners are encouraged to screen potential tenants on the basis of their tenancy histories, taking into account such factors as housekeeping habits and respect of the rights for other tenants." Franklin Tower One, supra, 157 N.J. at 611, 725 A.2d 1104.
We find nothing in the statutory provisions governing the Section 8 housing choice voucher program, 42 U.S.C.A. § 1437f(o), its implementing regulations, 24 C.F.R. § 982, or the HUD guidelines for the program set forth in the Housing Choice Voucher Program Guidebook, that support Jennings' claim that she is entitled to succeed to the tenancy rights in the *975 apartment her mother leased from plaintiff. In the absence of an affirmative grant of such a succession right in the federal statutes and regulations, we conclude that this right should not be implied.
Jennings argues that she is a "remaining member of the tenant family" with whom plaintiff entered into a Section 8 tenancy, and therefore, he can only evict her in accordance with the Section 8 statute and regulations. However, even assuming Jennings became part of the tenant family when she moved in with Guy and was entitled upon Guy's death to continue in the Section 8 program as a "remaining member of the tenant family," this does not mean she also succeeded to Guy's leasehold and that plaintiff was required to accept her as a tenant. The right that 42 U.S.C.A. § 1437f(d)(1)(A) reserves to landlords to select their tenants is not affected by the statutes, regulations and HUD Guidelines defining the terms "tenant family," "single person family," and "remaining member of a tenant family," see 42 U.S.C.A. § 1437a(b)(3), 24 C.F.R. § 982.4(b), 24 C.F.R. § 902.201(c), for purposes of determining eligibility to receive assistance under the Section 8 program. See U.S. Dep't of Hous. and Urban Dev., Housing Choice Voucher Program Guidebook, at 5.2.
This conclusion is supported by the Supreme Court of Virginia's decision in Carter v. Meadowgreen Assocs., 268 Va. 215, 597 S.E.2d 82 (2004), cert. denied, 544 U.S. 963, 125 S.Ct. 1727, 161 L.Ed.2d 606 (2005), which held that a son who had been residing in a leased property with the consent of the landlord was not permitted to succeed to his mother's Section 8 tenancy upon her death. At the time of the named tenant's death, she was in holdover status as a month-to-month tenant of a three-bedroom apartment. Id. at 83. The landlord informed the tenant's son that, as the sole remaining occupant, he did not qualify for such a large apartment, but could apply for a smaller unit. Ibid. The son filled out an application for a smaller unit, but was denied because of his poor credit history. Ibid. The son argued, based upon the Section 8 provision setting forth the "Declaration of Policy" to aid low-income families in obtaining safe and affordable housing and his status as the "remaining member of a tenant family," that he succeeded to his mother's tenancy rights. Id. at 84. The court rejected this argument, reasoning that the Section 8 statutory scheme does not override Virginia law on the succession of a tenancy. The court explained:
Congress included many provisions in the statutes governing "Section 8 housing" to regulate landlord-tenant relationships, but made no express provision for the devolution of a tenant's leasehold interest upon the tenant's death. . . . The definition of "families" sets forth the classes of persons intended to be benefited by the statutory scheme. Congress did not, however, undertake a total re-writing of state landlord-tenant law as it may apply to "Section 8 housing." We may assume that where the federal law is silent, the intent of Congress was to leave the applicable state law undisturbed.
[Ibid. (footnote omitted).]
The trial court did not discuss Carter, presumably because the parties failed to bring this decision to its attention. Instead, the court relied upon a New York trial court decision, Morrisania II Assocs. v. Harvey, 139 Misc.2d 651, 527 N.Y.S.2d 954, 956-58 (N.Y. City Civil Ct., Bronx Cty.1988), which conflated the right of a "remaining member of a tenant family" to continue receipt of Section 8 benefits with the right to succeed to the tenancy that the decedent had entered into with *976 the landlord. See also NSA N. Flatbush Assocs. v. Mackie, 166 Misc.2d 446, 632 N.Y.S.2d 388 (N.Y.City Civil Ct., Kings Cty.1995). However, the New York Court of Appeals has subsequently distinguished between the issue of whether an occupant of a subsidized apartment has succession rights to a Section 8 housing subsidy as a surviving family member, which is "governed solely by Federal law[,]" and the issue of whether the occupant is "entitled to continued possession of the premises," which is governed by "State law." Evans v. Franco, 93 N.Y.2d 823, 687 N.Y.S.2d 615, 710 N.E.2d 261, 262 (1999). Thus, the New York trial court opinion relied upon by the trial court apparently no longer has any precedential value even in New York. Furthermore, Carteret Housing Authority v. Gilbert, 301 N.J.Super. 109, 112, 693 A.2d 955 (Law Div.1997), which the trial court also relied upon, is based on the erroneous premise derived from the New York trial court opinion that the federal statutes and regulations governing eligibility for Section 8 low income housing assistance subsidies establish a right to succeed to a tenancy subsidized under that program.
Plaintiff never selected Jennings as a tenant; he only allowed her to occupy the apartment that he rented to her mother. After Guy's death ended her tenancy and Jennings sought to enter into her own tenancy, plaintiff had the right to evaluate Jennings' creditworthiness and fitness as a tenant in the same way as any other prospective tenant. See Franklin Tower One, supra, 157 N.J. at 611, 725 A.2d 1104; Pasquince, supra, 378 N.J.Super. at 596-97, 876 A.2d 834. Therefore, upon Guy's death and the expiration of her month-to-month tenancy, Jennings had no automatic right under the federal law and regulations governing the Section 8 housing choice voucher program to continue her occupancy of the apartment.

III
The Anti-Eviction Act provides in pertinent part:
No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, . . . except upon establishment of one of the following grounds as good cause:. . . .
[N.J.S.A. 2A:18-61.1.]
We have previously observed that "[t]he effect of [the Anti-Eviction] Act is to create a perpetual tenancy, virtually a life interest, in favor of a tenant of residential premises covered by the Act as to whom there is no statutory cause for eviction." Ctr. Ave. Realty, supra, 264 N.J.Super. at 350, 624 A.2d 996.
It is undisputed that Guy was entitled to the protections of the Anti-Eviction Act during her lifetime. Jennings contends that she also is entitled to the protections of the Act as "the assign[ ], under-tenant[ ] or legal representative[ ]" of Guy. N.J.S.A. 2A:18-61.1.
We have addressed similar contentions on a number of prior occasions. In Ctr. Ave. Realty, supra, a tenant died intestate, and her son, who was her executor, heir, an occupant listed on the original lease, and an occupant for the two years prior to his mother's death, sought to succeed to his mother's tenancy by virtue of any of these capacities. 264 N.J.Super. at 346-47, 624 A.2d 996. In an opinion by Judge Pressler, we rejected the son's argument that he was entitled to the protections of the Anti-Eviction Act in his capacity as executor or heir of his mother's estate:

*977 [T]he Anti-Eviction Act, by its terms, applies not only to the tenant, but also to the tenant's legal representatives. N.J.S.A. 2A:18-61.1. If this provision were construed literally, as defendant would have us do, the legal representative would apparently succeed to his decedent's perpetual term and, in effect, the tenancy could actually continue indefinitely down through all the generations succeeding the original tenant. We doubt that this conversion of the present virtual life interest of the tenant into a virtual fee simple by application of the rule in Shelley's case was intended by the Anti-Eviction Act, and we decline to so construe it.
[Id. at 351, 624 A.2d 996 (footnote omitted).]
Because the son had vacated the apartment before the appeal was heard, and the only remaining issues related to damages, we concluded that there was no need to "address [the son's] contention that he [was] entitled to succeed to his mother's tenancy as an occupant or tenant in his own right." Id. at 352, 624 A.2d 996. We also observed:
Because of the problematic overlay of the Anti-Eviction Act on common law landlord-tenancy principles, it may be that statutory solutions advancing the legislative purposes of the Act would be appropriate, but that, of course, is a matter for the Legislature.
[Ibid.]
The issue was again presented in Riverview Realty, Inc. v. Williamson, 284 N.J.Super. 566, 665 A.2d 1150 (App.Div. 1995). In that case, an owner of a property subject to a municipal rent control ordinance presented a lease to a month-to-month tenant providing that it would automatically terminate within ten days of the tenant's death. Id. at 567-68, 665 A.2d 1150. The tenant refused to sign the proposed lease, and the landlord brought an action for eviction on the ground that the tenant had rejected a reasonable change in the lease terms. Id. at 568, 665 A.2d 1150. We affirmed the trial court's determination that the landlord could compel the tenant to sign a lease containing the termination at death clause, but declined to pass upon the validity of this clause, stating:
In Center Ave. Realty, Inc. v. Smith, supra, 264 N.J.Super. at 353, 624 A.2d 996, we left "for another day, the question of the scope of our Anti-Eviction Act vis-à-vis occupant family members of deceased tenants." We do so again in this case. We do so because the answer to the question can best be determined in the light of the circumstances that exist at the time of the defendant's death. At that time, the equities can be examined in the light of the beneficial purposes of the Anti-Eviction Act and a fair determination reached as to whether the remedial purposes of the Act would be violated by enforcing such a clause.
[Id. at 570, 665 A.2d 1150.]
We also "recommend[ed] that the Legislature consider this recurring issue." Id. at 570, 665 A.2d 1150.
We have not addressed this issue again since Center Ave. Realty and Riverview Realty.[3] Moreover, the Legislature has not addressed the succession rights of *978 occupant family members, as suggested in both opinions. Therefore, we must decide whether Jennings was entitled to the protections of N.J.S.A. 2A:18-61.1 as an "assign[ ], under-tenant[ ] or legal representative[ ]" of Guy.
Although the Anti-Eviction Act does not include any definition of these terms, they have well-established meanings. An "assign," or "assignee," is "[o]ne to whom property rights or powers are transferred by another." Black's Law Dictionary 114 (7th ed. 1999). An "under-tenant," which is synonymous with a "sublessee," is defined as "[a] third party who receives by lease some or all of the leased property from a lessee." Id. at 1528, 1439. Guy did not transfer her rights under the lease with plaintiff to Jennings or sublet the apartment to her. Therefore, Jennings clearly was not an "assign" or "undertenant" of Guy.
A "legal representative," also referred to as a "personal representative," is defined as "[a] person who manages the legal affairs of another because of incapacity or death, such as the executor of an estate." Id. at 907, 1304. The record does not indicate whether Jennings was the executor or administrator of Guy's estate. However, even if Jennings were her mother's legal representative, we have previously concluded that N.J.S.A. 2A:18-61.1 should not be "construed literally" to allow a legal representative to "succeed to his decedent's perpetual term," which would have the effect of a "conversion of the present virtual life interest of the tenant into a virtual fee simple[.]" Ctr. Ave. Realty, supra, 264 N.J.Super. at 351, 624 A.2d 996. We adhere to this construction of N.J.S.A. 2A:18-61.1, and therefore, we conclude that Jennings is not entitled to the protections of the Anti-Eviction Act with respect to the apartment plaintiff leased to her mother.
In reaching this conclusion, we recognize that there are policy arguments supporting the view that the protections of the Anti-Eviction Act should be extended to occupant family members of a deceased tenant in some circumstances. Consequently, we again observe that this is a subject that may be appropriate for legislative attention.
Accordingly, we reverse the order of the trial court allowing Jennings to continue occupying the apartment plaintiff leased to her mother.
NOTES
[1] The record does not indicate whether the subsidy changed when Ms. Jennings moved into the apartment or whether her income was considered in calculating the household contribution amount.
[2] Although not documented in the record, DCA is apparently willing to pay a Section 8 rent subsidy for Jennings that would enable her to pay the rent. However, plaintiff refused to enter into a new Housing Assistance Payment Contract and lease with Jennings under which she would become the tenant of the apartment formerly leased to Guy.
[3] We addressed a similar issue in WG Associates v. Estate of Matilda Roman, 332 N.J.Super. 555, 557, 753 A.2d 1236 (App.Div.2000), which held that "a person who occupies an apartment by virtue of being a member of a protected tenant's household cannot extend or create a tenancy relationship by paying rent to the landlord after the protected tenant dies." However, WG Associates involved the interpretation of provisions of the Senior Citizen and Disabled Protected Tenancy Act, N.J.S.A. 2A:18-61.22 to -61.39, which are not contained in the Anti-Eviction Act.