NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____

| | | |
|---|---|---|
| STEVEN KUGLER & MICHELE YENIS, Plaintiffs, | : | TAX COURT OF NEW JERSEY |
| | : | DOCKET NO: 010985-2020 |
| | : | 011963-2021 |
| vs. | : | |
| | : | |
| CITY OF ATLANTIC CITY, | : | |
| Defendant. | : | |

_____:

Decided:  June 24, 2022.

Steven Kugler & Michele Yenis, plaintiffs, pro se.

Anthony Marchese for defendant (Chiesa Shahinian & Giantomasi, attorneys).

**CIMINO, J.T.C.**

## I.    INTRODUCTION.

Taxpayers, Steven Kugler and Michele Yenis appealed the assessment of their property in the City of Atlantic City.  While the appeal was pending, the property was leased to a third party.  The City wants to inspect the property in preparation for trial.  However, the tenant has rebuffed requests for an inspection.  The City has filed a motion to dismiss for failure to allow discovery.  The issue is who has the burden to secure the inspection, and who should suffer the consequences if an inspection cannot be completed.  For the reasons set forth in much greater detail below, the

court determines that the onus in upon the taxpayer to secure the inspection, and failing the completion of an inspection, the matter must be dismissed.

## II.    STATEMENT OF FACTS.

The taxpayers, Steven Kugler and Michele Yenis, are the owners of Unit 2701 located at 3101 Boardwalk, in the City of Atlantic City, in the County of Atlantic. The unit is located on the 27th floor of a housing tower. The property is known as Qualifier C2701 of Lot 1.01 of Block 28 on the City of Atlantic City's tax maps.

On September 21, 2020, the taxpayers filed their appeal with the Tax Court for the 2020 tax year. Plaintiffs later appealed the 2021 assessment as well. On August 23, 2021, the City requested an inspection of the property. However, on October 17, 2020, the taxpayers entered into a lease of the premises to a third party.

In response to the inspection request, the taxpayers indicated the unit had been rented to a tenant who is 93 years old. The taxpayers asserted the tenant "has changed the locks so we do not have access." The factual basis for the asserted lock change was not spelled out by the taxpayers. In subsequent correspondence the taxpayers assert that they requested the tenant "allow an appraiser to enter. Unfortunately, she refused." Taxpayers further stated "[w]e can not force the tenant and jeopardize her tenancy. We require her to stay, otherwise it would be devastating to our family."

-2-

The taxpayers and their tenant have entered into a written lease. The lease provides in pertinent part:

> 11. Access. The Landlord shall have access to the Property upon reasonable notice to the Tenant to (a) inspect the Property, (b) make necessary repairs, alterations, or improvements, (c) supply services, and (d) show it to possible buyers, lenders, contractors, appraisers and insurers. The Landlord may show the Property to rental applicants at reasonable hours on notice to the Tenant. Tenant agrees to allow Landlord, Landlord's agent, or any municipal employees access during daylight hours for the inspection of the Property for purposes of determination/appeal of Real Estate Tax Assessments. The Landlord or the Landlord's Authorized Agent may enter the Property at any time without notice to the Tenant in case of emergency.

The City filed the instant Motion to Dismiss the taxpayer's complaint for failure to provide discovery.

### III. LEGAL CONCLUSIONS.

All property assessment appeals with tax bills of less than $25,000.00 in the prior tax year can be filed as a small claims case.[1] N.J.S.A. 2B:13-14; R. 8:3-4(d), R. 8:11(a)(2). For a small claims action, discovery from the taxpayer is limited to inspection of the subject premises, a closing statement if there has been a sale of the subject premises within three years of the assessing date, the cost of improvements

---

[1] Assessment appeals of residential properties consisting of one through four units also qualify as small claims cases regardless of tax bill amount.

within three years of the assessing date, income, expense and lease information for income-producing property and information relating to a claim of damage to the property occurring between October 1st of the pre-tax year and January 1st of the tax year. R. 8:6-1(a)(4). Discovery from the municipality is limited to the property record card. Id.

When one party fails to provide discovery, the other party entitled to the discovery may move for an order dismissing the complaint. R. 4:23-5(a)(1), see also R. 8:6-1(a) (setting R. 4:10-1 through R. 4:18-2 and R. 4:22 through 4:25 as framework for discovery). In this case, the City has filed such a motion after attempts to inspect the property were rebuffed by the tenant.

The first question to be resolved is whether the municipality has the burden to show a need for the inspection. It goes without saying that parties may obtain relevant discovery. R. 4:10-2(a). Certainly, the inspection of a premises which is the subject of a tax appeal is relevant. To be sure, the court rules specifically provide that such an inspection be allowed. R. 8:6-1(a)(4). Thus, no further showing of necessity by the municipality is needed.

The next question is which party should have the onus to procure the inspection. The City contends that the taxpayer has the onus and the failure to provide the inspection should result in dismissal.

An inspection is the one of the few types of discovery which a municipality can pursue under the small claims practice of the Tax Court. <u>R.</u> 8:6-1(a)(4). It must be remembered that as a practical matter, "local tax officials often cannot know whether a residence has undergone renovations which have increased its value without entering the residence itself." <u>Smith v. Ayotte</u>, 356 F. Supp. 2d 9, 16 (D.N.H. 2005). In other words, an inspection is an important part of the tax appeal process. Without an inspection, it would not be fair to the City, or to the other taxpayers in the City who would have to make up any shortfall in tax revenues if a reduction in assessment was determined based upon limited evidence. Thus, the taxpayers have the onus of procuring an inspection.

The taxpayers assert they cannot procure an inspection due to tenant refusal. The ability of the taxpayers to compel the tenant to allow an inspection turns on the relationship between the taxpayers and the tenant. "The existence of a landlord-tenant relation is contractual in nature and may be express or implied." <u>WG Assoc. v. Est. of Roman</u>, 332 N.J. Super. 555, 560 (App. Div. 2000). A "lease is a contract between [the parties] which sets forth their rights and obligations to each other . . ." <u>Town of Kearny v. Discount City of Old Bridge, Inc.</u>, 205 N.J. 386, 411 (2011). "A residential lease consists of a set of mutually dependent covenants. The tenant's covenant to pay rent is dependent upon the landlord's covenant permitting the tenant the quiet enjoyment of the leased premises. The landlord must see to it that the

tenant actually obtains full, complete, and exclusive possession." Campi v. Seven Haven Realty Co., 294 N.J. Super. 37, 42 (App. Div. 1996). Generally, a "lease gives exclusive possession of the premises against all the world, including the owner . . .." Thiokol Chemical Corp. v. Morris County Bd. of Tax'n., 41 N.J. 405, 417 (1964). However, such exclusive possession can be "subject to reservation of a right of possession in the landlord for any purpose or purposes not inconsistent with the privileges granted the tenant." Township of Sandyston v. Angerman, 134 N.J. Super. 448, 451 (App. Div. 1975).

Here, the parties entered into a lease. While the starting point of the analysis is that the tenant has exclusive possession, the terms of the lease provide that the taxpayer reserved the right to "access to the Property" to "show it to . . . appraisers." The tenant also agreed to allow taxpayer, or their agent, or any municipal employees "access during daylight hours for the inspection of the Property for purposes of determination/appeal of Real Estate Tax Assessments."

Having the right of inspection for the tax appeals is in keeping with the prior decisions of this court. These cases deal with the analogous situation of how a property purchaser protects itself from the potential failure of the seller to complete a Chapter 91 request. ADP of New Jersey, Inc. v. Township of Parsippany-Troy Hills, 14 N.J. Tax 372 (Tax 1994); Yeshivat v. Borough of Paramus, 26 N.J. Tax 335 (Tax 2012); 975 Holdings, LLC v. City of Egg Harbor, 30 N.J. Tax 124 (Tax

2017). Under Chapter 91, a taxpayer owning income producing property is required to provide income and expense information within forty-five days of a request, or otherwise face a bar to a full tax appeal. L. 1979, c. 91 § 1. N.J.S.A. 54:4-34.

The purpose of Chapter 91 is to encourage the remittance of financial information so that the local assessor can arrive at an accurate assessment. In prior cases, the issue has arisen whether the prohibition of a full appeal applies to subsequent property owners when the predecessor in title failed to comply with Chapter 91. This court has determined that:

> [i]t is the obligation of a purchaser . . . to protect itself in its agreement with the seller as to any rights that it may wish to assert with respect to the property tax.
>
> [ADP, 14 N.J. Tax at 378-79; 975 Holdings, 30 N.J. Tax at 131-32. See also Yeshivat, 26 N.J. Tax at 346.]

Likewise, it is the obligation of a landlord to protect itself in an agreement with a tenant as to any rights it may wish to assert with regard to inspection of the property for tax appeal purposes. In other words, the landlord can bargain with the tenant for inspection of the property.

Here, the taxpayers did bargain with the tenant to obtain the right to inspect the property. The tenant has refused an inspection. This court is not going to insert itself into a contractual dispute between the taxpayer and its tenant. At this juncture, the court is going to dismiss the complaint without prejudice per R. 4:23-5(a)(1).

Going forward the taxpayers essentially has three options. First, taxpayer can accept the refusal of the tenant as to inspection and the dismissal will stand. Second, the taxpayers can seek enforcement of the lease provision through eviction or some other legal process. Certainly the law provides that a violation of a lease is grounds for an eviction in certain instances. N.J.S.A. 2A:18-61.1(e)(1). However, it first has to be determined whether the lease term is enforceable through eviction. Moreover, under the tedious procedures of the Anti-Eviction Act, the taxpayers would have to first demand compliance through a notice to cease, then followed by a notice to quit, both notices satisfying the requisite timeframes, specificity and service requirements. N.J.S.A. 2A:18-61.1(e)(1), 61.2(b). Third, the taxpayers can enter into negotiations with the tenant to gain entry to the property.

There may be a multitude of reasons why the current tenant opposes an inspection ranging from COVID fears to privacy concerns to convenience to indifference to dissatisfaction with the premises. Those concerns can certainly be addressed through negotiations to allow an inspection, but is not for the court to speculate or wander into such negotiations. Such negotiations may involve litigation or the threat of litigation based upon the terms of the lease. It is none of the court's concern, nor should the court inject itself into such a dispute. It is better left to the parties to resolve, and to determine the appropriate consideration for any inspection.

Finally, placing the burden on the taxpayer to secure the inspection is appropriate for one other reason. It prevents mischief of a taxpayer in thwarting an inspection through establishment of a tenancy. If the burden was placed on the municipality to secure the inspection, a taxpayer could easily avoid such inspection by leasing the property to a related entity and then claiming that the inspection is not possible. See Yeshivat, 26 N.J. Tax at 348 (discussing concern of sham sale to avoid limitations of Chapter 91 if law allowed new owner to avoid failure of prior owner to answer Chapter 91 request.) Moreover, even in a legitimate transaction, a friendly landlord and tenant may achieve a litigation advantage benefitting the landlord by thwarting an inspection to put the municipality at a disadvantage. Cf., Ayotte, 356 F.Supp.2d at 17 ("Allowing a taxpayer to prevent an inspection of his or her home absent a warrant during the appraisal process and then to challenge the result of that process through abatement proceedings would adversely impact property tax receipts."). By placing the onus on the appealing taxpayer with the sanction of dismissal protects against such subterfuge.

In summation, the matter is dismissed without prejudice. R. 4:23-5(a)(1). The taxpayers can arrange an inspection and apply for restoration of the case. Id. Certainly, the taxpayers can reach out to the tenant and see if they can reach an understanding as to an inspection. The court is not going to wander in to the thicket of trying to set the appropriate value or parameters of such entry. The taxpayers and

tenant are free to reach what they consider to be a fair and mutual bargain as to access.

## IV. CONCLUSION.

For the reasons stated in this opinion, Defendant's Motion to Dismiss Plaintiff's Complaint is GRANTED.